[No. 3595.   Decided February 18, 1901.]

STATE OF WASHINGTON ON THE RELATION OF SPO-
KANE & BRITISH COLUMBIA TELEPHONE & TELEGRAPH
Co., *Appellants,* v. CITY OF SPOKANE *et al., Respond-
ents.*

CONSTITUTIONAL LAW — EXCLUSIVE PRIVILEGES.

Where a municipality has not by ordinance or contract
attempted to give an exclusive right to the use of its streets to a
telephone company to whom it had granted an easement therein,
its refusal to grant the same rights to another telephone com-
pany, under its charter (Bal. Code, § 739, subd. 7), empowering
it to authorize or prohibit the use of electricity in or upon any

of its streets, would not raise any question as to the violation of art. 1, § 12, of the state constitution, which provides that "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

SAME — SELF-EXECUTING PROVISIONS.

Art. 12, § 19, of the state constitution, which declares the right of any corporation or individual to construct and maintain lines of telegraph and telephone upon the streets and highways within the state, that such lines shall be common carriers, and that the right of eminent domain is extended to them, is not self-operative, but by its own terms imposes the duty on the legislature of providing by general law reasonable regulations to give effect to the section, and hence confers no power to use the streets and highways other than as the legislature may provide.

MUNICIPAL CORPORATIONS — USE OF STREETS BY TELEPHONE LINES —
    POWER OF CITY TO REFUSE — CONSTRUCTION OF STATUTE.

There being no restriction on the legislative control of streets and highways contained in art. 12, § 19, of the constitution, which declares the right of individuals and corporations to maintain lines of telegraph and telephone within the state, the provision in Bal. Code, § 4369, the statute passed pursuant to such constitutional declaration, "that where the right-of-way, as herein contemplated, is within the corporate limits of any incorporated city, the consent of the city council thereof shall be first obtained before such telegraph or telephone line can be erected thereon," is valid, and amounts to an authorization to the council to refuse, as well as consent, to such use of the streets, and is not intended as an authorization of power merely to prescribe reasonable and proper regulations for the construction and operation of such lines, inasmuch as the power of regulation and control is amply conferred by Bal. Code, § 739, subd. 7.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge. Affirmed.

*Stoll & Macdonald, Henley, Kellam & Lindsley (W. S. Dawson,* of counsel), for appellant.

*Fred M. Dudley,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—The appellant (plaintiff) is a corporation created under the laws of the state for the purpose of constructing and operating a telephone line and system within this state between the Canadian boundary on the north and the city of Spokane on the south. It made application to the city of Spokane for the city's consent to erect its telephone poles and construct its wires through the streets of the city. In its application it offered to submit to such reasonable rules and regulations as might be imposed by the city. Upon consideration of the application by the city council, such consent was refused. Appellant thereafter instituted proceedings in the nature of mandamus to compel the city to give its consent to the construction and operation of appellant's telephone system; and that the city be required to prescribe reasonable rules and regulations therefor. The affidavit upon which the application was based states that appellant was willing to abide by and conform to any reasonable rules and regulations imposed by the city; that it had built and was operating and maintaining a system of telephones between the town of Northport and the city of Spokane, a branch line from the town of Myers Falls to the town of Republic, and another line from Bossburg to the boundary line between the United States and Canada, connecting with towns in the province of British Columbia; that it was under contractual relations with another company owning and operating telephones in the province of British Columbia by which it was required to deliver the messages of the foreign company within this state, and especially within the city of Spokane; that in 1896 it had entered into a contract with the Inland Telephone & Telegraph Exchange, in the the city of Spokane, owning and operating lines of telephone in Idaho, Oregon, California, and elsewhere in this

state; that under the terms of such contract the wires of appellant were connected with the central office of the Inland Telephone & Telegraph Company in the city of Spokane, and, as occasion required, were connected with the system of the Inland Telephone Company and the telephones of its numerous subscribers in the city of Spokane; that, by reason of such contract, appellant had procured a large and lucrative business which produced an income of many thousand dollars per month, and was rapidly increasing; that in June, 1899, the Inland Telephone Company terminated its contract with appellant and severed its lines from its office, rendering impossible any communication from appellant's lines to those of the Inland Company, and making communication impossible between the customers and patrons of appellant and persons having telephones in offices or residences in the city of Spokane; and that, to enable appellant to properly transact its business and give proper service to the public as a common carrier, it became necessary for appellant to establish an exchange at the city of Spokane. An alternative writ of mandamus was issued from the superior court. The respondent city appeared and demurred to the writ, and moved that the same be quashed. The demurrer was sustained.

Pertinent to the issues involved in the controversy are the following provisions of the constitution of Washington:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Article 1, § 12.

"Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct and maintain lines

of telegraph and telephone within this state, and said companies shall receive and transmit each other's messages without delay or discrimination, and all of such companies are hereby declared to be common carriers and subject to legislative control. Railroad corporations organized or doing business in this state shall allow telegraph and telephone corporations and companies to construct and maintain telegraph lines on and along the rights-of-way of such railroads and railroad companies, and no railroad corporation organized or doing business in this state shall allow any telegraph corporation or company any facilities, privileges, or rates for transportation of men or material or for repairing their lines not allowed to all telegraph companies. The right of eminent domain is hereby extended to all telegraph and telephone companies. The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section." Article 12, § 19.

Paragraph 7, § 739, Ballinger's Code, vests cities of the first class, of which respondent is one, with power—

"To lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof, and to vacate the same, and to authorize or prohibit, the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof."

Section 4369, Id., provides:

"Any telegraph or telephone corporation or company, or the lessees thereof, doing business in this state, shall have the right to construct and maintain all necessary lines of telegraph or telephone for public traffic along and upon any public road, street, or highway, along or across the right-of-way of any railroad corporation, and may erect poles, piers, or abutments for supporting the insulators, wires and any other necessary fixtures of their

lines, in such manner and at such points as not to incommode the public use of the railroad or highway, or interrupt the navigation of the waters: provided, that when the right-of-way of such corporation has not been acquired by or through any grant or donation from the United States, or this state, any county, city or town therein, then the right to construct and maintain such lines shall be secured only by the exercise of the right of eminent domain, as provided by law: provided further, that where the right-of-way, as herein contemplated, is within the corporate limits of any incorporated city, the consent of the city council thereof shall be first obtained before such telegraph or telephone lines can be erected thereon."

1.   The issue involved is succinctly stated by counsel for appellant:

"Has the city council the power to refuse the use of its streets to a corporation competent and qualified to erect a telephone exchange within the city?"

Counsel have first addressed themselves to constitutional rights, and maintain that § 12, art. 1, of the constitution, *supra,* inhibits municipalities from granting exclusive franchises, and that, as such franchise has been granted to one telephone company by the city, the refusal to grant another to appellant in fact constitutes the first grant an exclusive one; and well-considered authority is cited to sustain the principle that neither the city nor the legislature may grant exclusive privileges.   Among them are *Norwich Gaslight Co. v. Norwich City Gas Co.,* 25 Conn. 19; *State ex rel, Attorney General v. Cincinnati Gaslight & Coke Co.,* 18 Ohio St. 262.   The argument against the power to grant an exclusive privilege is sound, and is fully sustained in the rule announced by this court in *North Springs Water Co. v. Tacoma,* 21 Wash. 517 (58 Pac. 773, 47 L. R. A. 214). But the question of the power to grant an exclusive privilege cannot arise here.

If the city had attempted to grant such privileges to a telephone company, so as to disable itself from consenting to the construction of another telephone system through its streets, such attempt would be void and beyond its power.  The city cannot by ordinance or contract disable itself to consent to the erection of telephone lines upon its streets.  The volition to consent or refuse is one of the powers vested by the legislature in cities of the first class, and this continuing power cannot be divested without the sanction of the legislature.  The legislature, within constitutional limitations, has sovereign control of the streets and highways of the state and the cities.  The primary purpose for which highways and streets are established and maintained is for the convenience of public travel. The use of such highways and streets for water mains, gas pipes, telephone and telegraph lines is secondary and subordinate to the primary use for travel, and such secondary use is permissible only when not inconsistent with the primary object of the establishment of such ways. *Cincinnati Inclined-Plane Ry. Co. v. City & Suburban Tel. Ass'n,* 48 Ohio St. 390 (12 L. R. A. 534, 29 Am. St. Rep. 559, 27 N. E. 890); *Hudson River Tel. Co. v. Watervliet Turnpike & R. Co.,* 135 N. Y. 393 (17 L. R. A. 674, 31 Am. St. Rep. 838, 32 N. E. 148); *Halsey v. Rapid Transit St. Ry. Co.,* 47 N. J. Eq. 380 (20 Atl. 859).  It would seem that, within the fundamental limitations mentioned, the legislative control of ways and streets for its secondary use is absolute, and that the legislative discretion in this regard is not subject to judicial intervention.  That the legislature may delegate to municipalities such powers and act through their instrumentality is unquestioned.  2 Dillon, Municipal Corporations (3d ed.), §§ 705, 724; *Pacific R. R. Co. v. Leavenworth,* 18 Fed. Cas. 953 (No. 10,649).  The city streets are

limited in dimension.   It is apparent that the secondary uses of the streets are physically restricted.   When such limit is approached or reached must be determined by some competent authority.   The inconvenience, too, of the obstruction of the streets for any secondary uses, and also the breaking up of the solid surface, which is frequently of stone and other expensive material, all suggest the propriety of the control of such uses in the discretion of the municipality.

It is further urged that § 19, art. 12, of the constitution declares the right of any corporation or individual to construct and maintain lines of telegraph and telephone within the state, and that such lines are declared to be common carriers, and the right of eminent domain was extended to them.   It may be observed that, in the absence of such constitutional provision, telegraph and telephone companies could derive such rights from the legislature and it may also be seen that the same section imposes the duty on the legislature to provide by general law reasonable regulations to give effect to the section.   The important feature of the section seems to be the duty imposed on the right of way of railroad corporations.   The section of the constitution, however, is not self-operative, but requires the action of the legislature to give it effect.   There is no prescription of rights referable to the roads, highways, and streets of the state.   The obvious construction of this provision is that all such rights were left to the discretion of the legislature.   The only right absolutely declared is to maintain lines of telegraph and telephone within the state.

2.   It may be observed, then, that § 4369, Ballinger's Code, is pursuant to the constitutional declaration upon the subject of telegraphs and telephones.   The statute authorizes the construction and maintenance of all neces-

sary lines of telegraph and telephone for public service
along and upon any public road, street, or highway.
But when the right of way has not been acquired by grant
or donation from the United States or the state, or any
county, city, or town, the right must be secured by the
exercise of eminent domain; and it is further declared
"that where the right-of-way, as herein contemplated, is
within the corporate limits of any incorporated city, the
consent of the city council thereof shall be first obtained
before such telegraph or telephone line can be erected
thereon." The contention of counsel for appellant that
the statute limits the authority of the city council to rea-
sonable and proper regulations, and to prescribing the
method in which telegraph and telephone companies shall
construct and operate their lines, cannot be conceded. As
has been seen, by another statute, the authority to regu-
late and of complete control of such lines has been given.
The power to refuse is correlative with the power to con-
sent, and such power is plainly authorized by the statute.
The first clause of the section grants the easement along
any public road, street, or highway, and across the right-
of-way of any railroad corporation, in such manner as not
to incommode the public use of the railway or highway.
This provision reserves the necessary power of police
regulation everywhere in the state, and it has been seen
that the same power to regulate and control the use of
the street was in apt terms conferred upon cities of the
first class. The authorities cited by appellant in *Inhab-
itants of Summit Township v. New York & N. J. Tel.
Co.*, 57 N. J. Eq. 123 (41 Atl. 146), and *Atlantic City
Waterworks Co. v. Consumers' Water Co.*, 44 N. J. Eq.
427 (15 Atl. 583), construe different grants of power
and upon different states of fact from those appearing
in the case at bar and under our statute. In addition

to the reasons suggested heretofore for imposing the powers and duties upon municipalities to control the streets, it is pertinent to refer to the long usage in this country for vesting such authority in municipalities. Such usage is historical, and is expressed in many statutes in the different states and in the mother country. The people of a municipality, who incur and pay the expenses for the construction and maintenance of their streets, and who largely use them, are usually most capable of exercising discretion in the secondary and subordinate purposes for which their streets shall be used. A recent case from the circuit court of appeals of the Fourth circuit (*Southern Bell Telephone & Telegraph Co. v. Richmond,* 103 Fed. 31), in which the statute of the state of Virginia upon the particular controversy involved is substantially the same as our statute, is very much in point here. Under the Virginia statute the power of the city council to withhold consent or attach any conditions thereto was fully sustained.

The judgment is affirmed.

DUNBAR and ANDERS, JJ., concur.