[No. 7816.   Department One.   May 28, 1909.]

WESTERN UNION TELEGRAPH COMPANY, *Respondent*, v.
E. M. LAKIN, *Treasurer of Pierce County, Appellant.*[1]

TAXATION—FEDERAL FRANCHISES — TELEGRAPH COMPANIES.   The
Federal franchise granted to telegraph companies by U. S. Rev.
Statutes, § 5263, to maintain lines on and over the military or post
roads of the United States, is not subject to an arbitrary franchise
tax by the state.

SAME—TELEGRAPH COMPANIES—EXCLUSIVENESS OF FEDERAL FRAN-
CHISE.   The Federal franchise granted to telegraph companies by
U. S. Rev. Statutes, § 5263, to maintain its lines on and over the
military or post roads of the United States, confers the right to do
business upon all the roads and highways in cities and counties,
subject to police regulation, and is exclusive; hence a municipal
franchise is valid only as a police regulation and is not subject to
an arbitrary franchise tax.

SAME—VOID ASSESSMENT—OBJECTIONS — WAIVER.   Failure of a
telegraph company to list all its tangible property for taxation does
not preclude it from resisting a tax on its Federal franchise.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered November 18, 1908, upon find-
ings in favor of the plaintiff, after a trial on the merits
before the court without a jury, in an action for an injunc-
tion.   Affirmed.

*H. G. Rowland, Robert M. Davis*, and *J. L. McMurray,*
for appellant.

*Harold Preston (Beverly L. Hodghead* and *George H.
Fearons*, of counsel), for respondent.

CHADWICK, J.—This action was brought by the Western
Union Telegraph Company, a corporation organized under
the laws of the state of New York and doing business as a
common carrier of telegraphic messages in this and other
states in the Union, to restrain the county of Pierce from
collecting a tax levied upon its franchise in Pierce county.

[1]Reported in 101 Pac. 1094.

The record shows that the poles, wires, office fixtures, and other tangible property belonging to the company were listed for taxation, and that the assessor, of his own initiative, had listed the franchise of the company for taxation in the sum of $15,000. It also appears that the company was operating and maintaining its lines upon the public roads and highways in Pierce county, also upon the streets and alleys of the cities of Tacoma, Puyallup, Orting, Ruston, Steilacoom, Sumner, and Buckley; that it had certain valuable contracts with the Associated Press, a right of way over the right of way of the Northern Pacific Railway Company, and a gross business of over $40,000 within the county for the year preceding the assessment. It also appears that three ordinances have been passed by the city of Tacoma granting rights to the company to operate in that city. Only one of these was admitted by the court, but the question left for our decision is not affected by this ruling. The nature of the business carried on by the company, its relation and importance to the Federal government, induced Congress to fix upon it a Federal character, and although it was organized under the laws of the state of New York, it has extended its lines and business throughout the states and territories under an act of Congress in the nature of a franchise, and which we shall refer to as the Federal franchise, passed July 24, 1866 (U. S. Rev. Stats. § 5263), which reads as follows:

"Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to interfere with the ordinary travel on such military or post-roads."

The obligations of this act of Congress were accepted by the company on.June 8, 1867, and it now insists that it has the right to construct, maintain, and operate lines of telegraph over and along any of the military roads and post-roads of the United States; that the ordinance of the city of Tacoma did not, and could not, confer any greater right upon the company than it had under the Federal franchise; that it was in effect only a police regulation, conveying or creating nothing that was tangible or taxable by the county or state. The briefs and arguments, as well as the record submitted for review, fairly raise the questions, whether the Federal franchise is exclusive, whether it is subject to taxation, and whether the company is entitled to any privileges under the Federal franchise, it being organized under the laws of a sister state.

The principal case relied on by appellant is that of *Western Union Tel. Co. v. Attorney General of Massachusetts*, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790. The property of the company was assessed by the state of Massachusetts in the following manner: The capital stock, or such proportion thereof as the value of the plant in Massachusetts bore to the value of the plant in the United States, was listed for taxation. An estimate of all of the company's property in the state and all its property in the United States was made, but no deduction was made for the Federal franchise. This method of taxation was upheld. In that case, and in all the cases cited by appellant, it is insisted that the court held that the state had a right to tax a Federal franchise. If the cases be so construed, appellant is probably supported in his contention by the weight of authority. He cites and relies upon the following cases: *Western Union Tel. Co. v. Attorney General of Massachusetts, supra; Massachusetts v. Western Union Tel. Co.*, 141 U. S. 40, 11 Sup. Ct. 889, 35 L. Ed. 628; *Postal Tel. Cable Co. v. Adams*, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311; *Western Union Tel. Co. v. Taggart*, 163 U. S.

1, 16 Sup. Ct. 1054, 41 L. Ed. 49; *Adams Express Co. v. Ohio State Auditor*, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965; *Western Union Tel. Co. v. Missouri ex rel. Gottlieb*, 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116; *Western Union Tel. Co. v. Pennsylvania R. Co.*, 195 U. S. 540, 25 Sup. Ct. 133; *Western Union Tel. Co. v. Wright*, 158 Fed. 1004; *Henderson Bridge Co. v. Henderson*, 173 U. S. 624, 19 Sup. Ct. 877, 43 L. Ed. 835; *State ex rel. Coleman v. Western Union Tel. Co.*, 75 Kan. 609, 90 Pac. 299. On the other hand, respondent contends, not only that the courts have not held that the state can tax a Federal franchise, but that it has been held that it cannot do so. It relies upon the following cases: *California v. Central Pac. R. Co.*, 127 U. S. 1, 8 Sup. Ct. 1073, 32 L. Ed. 150; *San Francisco v. Western Union Tel. Co.*, 96 Cal. 140, 31 Pac. 10, 17 L. R. A. 301; *Western Union Tel. Co. v. Texas*, 105 U. S. 554, 26 L. Ed. 1067; *Western Union Tel. Co. v. Visalia*, 149 Cal. 744, 87 Pac. 1023.

We think that, in all the cases cited by appellant, the real question was the legality and constitutionality of the method employed to fix the value of the capital stock or tangible property for the purposes of taxation, and that the question of separate assessment of the franchise, as such, was not the controlling one. In the case reported in 125 U. S. 530, the court said, in reference to the Federal statute:

"While the state could not interfere by any specific statute to prevent a corporation from placing its lines along these post-roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the state for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one state the authority to enter the territory of any other state and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the state into which it thus entered, and was under no obligation to pay its fair pro-

portion of the taxes necessary to its support. . . . The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the state of Massachusetts, and the proportion of the length of its lines in that state to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by § 5263 of the Revised Statutes, or by the commerce clause of the Constitution;"

a conclusion with which we agree. The whole argument proceeds upon the theory that the method employed was a tax upon property, rather than upon the privilege of doing business in the state of Massachusetts.

That a Federal franchise, the privilege of doing interstate business, could not be interfered with by injunction is additional proof that the court did not intend to sanction a tax upon the franchise, for had it been considered a proper subject of taxation, it was subject to all the laws of the state enacted in aid of tax enforcement. An injunction is a remedy provided by the statutes of Massachusetts for the enforcement of the tax, and upon appellant's theory should not have been denied. On this point, the court said:

"The effect of this injunction, if obeyed, is to utterly suspend the business of the telegraph company, and defeat all its operations within the state of Massachusetts. The act of Congress says that the company accepting its provisions 'shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States.' It is found in this case that 2334.55 miles of the company's lines, out of 2833.05 on which this tax is assessed, are along and over such post-roads, and of course the injunction prohibits the operation of the defendant's telegraph over these lines, nearly all it has in the state. If the Congress of the United States had authority to say that the company might construct and operate its telegraph over these lines, as we have repeatedly

held it had, the state can have no authority to say it shall not be done. The injunction in this case, though ordered by a Circuit Court of the United States, is only granted by virtue of section 54 of chapter 13 of the Public Statutes of Massachusetts. If this statute is void, as we think it is, so far as it prescribes this injunction as a remedy to enforce the collection of its taxes by the decree of the court awarding it, the injunction is erroneous."

The law of the state of Massachusetts was again upheld in *Massachusetts v. Western Union Tel. Co.*, 141 U. S. 40. In these cases, as we read them, it was held that an excise upon the capital of a corporation, fixed by reference to the proportion the length of its lines within a state bears to their entire length throughout the country, was not unfair and unjust, but furnished a basis for levy of a property tax, and when so fixed the company could not complain, although the value of its franchise became an element in determining such value. The other cases cited by appellant are in accord with this conclusion.

While the courts have held that a franchise granted by the Congress of the United States may be considered in fixing the value of the capital stock and tangible property for the purposes of taxation, they have never held that a mere arbitrary tax upon a Federal franchise, with no fixed basis for valuation and as a distinct item separate and disassociated from the tangible property or capital stock, is proper. The proper distinction between an arbitrary tax on a mere privilege to do business under the Federal law and a tax levied upon property, is clearly stated in *Postal Tel. Cable Co. v. Adams*, 155 U. S. 688, where a tax was graduated according to the amount and value of the property measured by miles. This was held to be a property tax, and not a tax imposed on the privilege of doing an interstate business. The court said:

"In marking the distinction between the power over commerce and municipal power, literal adherence to particular nomenclature should not be allowed to control construction

in arriving at the true intention and effect of state legisla-
tion. We are of opinion that it was within the power of the
state to levy a charge upon this company in the form of a
franchise tax but arrived at with reference to the value of
its property within the state and in lieu of all other taxes,
and that the exercise of that power by this statute, as ex-
pounded by the highest judicial tribunal of the state in the
language we have quoted, did not amount to a regulation
of interstate commerce or put an unconstitutional restraint
thereon."

The case reported in 163 U. S., page 1, involved a statute
of the state of Indiana, based on the principle of taxation
adopted by the state of Massachusetts, and is a reaffirmation
of the case reported in 125 U. S. 530. After reference to
that case and others, the court said:

"Those decisions clearly establish that a statute of a state,
requiring a telegraph company to pay a tax upon its prop-
erty within the state, valued at such a proportion of the
whole value of its capital stock as the length of its lines
within the state bears to the length of all its lines everywhere,
deducting a sum equal to the value of its real estate and ma-
chinery subject to local taxation within the state, is con-
stitutional and valid, notwithstanding that nothing is in
terms directed to be deducted from the valuation, either for
the value of its franchises from the United States, or for the
value of its real estate and machinery situated and taxed in
other states; unless there is something more showing than
the system of taxation adopted is oppressive and unconsti-
tutional."

In 166 U. S. 185, the power of the state to tax the prop-
erty of a foreign corporation doing an interstate business, at
its true value, was affirmed. Mr. Justice Brewer, who ren-
dered the opinion of the court, said:

"The burden of the contention of the express companies is
that they have within the limits of the state certain tangible
property, such as horses, wagons, etc.; that that tangible
property is their only property within the state; that it must
be valued as other like property, and upon such valuation
alone can taxes be assessed and levied against them. But

this contention practically ignores the existence of intangible property, or at least denies its liability for taxation. In the complex civilization of today a large portion of the wealth of a community consists in intangible property, and there is nothing in the nature of things or in the limitations of the Federal Constitution which restrains a state from taxing at its real value such intangible property. . . . A distinction must be noticed between the construction of a state law and the power of a state. If a statute, properly construed, contemplates only the taxation of horses and wagons, then those belonging to an express company can be taxed at no higher value than those belonging to a farmer. But if the state comprehends all property in its scheme of taxation, then the good will of an organized and established industry must be recognized as a thing of value. The capital stock of a corporation and the shares in a joint stock company represent not only the tangible property, but also the intangible, including therein all corporate franchises and all contracts, privileges and good will of the concern."

The case reported in 190 U. S. 412, reaffirms the doctrine of the Massachusetts cases, holding the tax there levied to be a property tax, and not an arbitrary tax upon the franchise. It has never been so held, and enough has been said in the cases just reviewed to show that a mere tax on a Federal franchise could not be sustained. The franchise to do business on and over the highways and post-roads in the United States is not only a permission, but an advantage to the government, growing out of the necessities of administration. In it the government has an interest. Upon it it must place dependence in time of war and in time of peace. It is a creature not alone of the bounty of the government; it is born of its needs, and is essential to its maintenance. As was said by Justice Gray, in 163 U. S., on page 14:

"It is not and cannot be doubted that each state of the Union may tax all property, real and personal, within its borders, belonging to persons or corporations, although employed in interstate or foreign commerce, provided the rights and powers of the National government are not interfered with."

It requires no argument to sustain the point that a mere tax on the privilege of doing business, which in one way or another might interrupt this governmental interest, cannot be sustained.   It is upon this principle that the case of *California v. Central Pac. R. Co., supra*, rests.   Mr. Justice Bradley, speaking for the court, not only declares this rule, but also notices the rule upon which taxation of property of this character must be made to depend:

"Recollecting the fundamental principle that the constitution, laws and treaties of the United States are the supreme law of the land, it seems to us almost absurd to contend that a power given to a person or corporation by the United States may be subjected to taxation by a state.   The power conferred emanates from, and is a portion of, the power of the government that confers it.   To tax it, is not only derogatory to the dignity, but subversive of the powers of the government, and repugnant to its paramount sovereignty.   It is unnecessary to cite cases on this subject.   The principles laid down by this court in *McCulloch v. Maryland*, 4 Wheat. 316; *Osborn v. The Bank of the United States*, 9 Wheat, 738; and *Brown v. Maryland*, 12 Wheat. 419; and in numerous cases since which have followed in their lead, abundantly sustain the views we have expressed.   It may be added that these views are not in conflict with the decisions of this court in *Thomson v. Pacific Railroad*, 9 Wall. 579, and *Railroad Co. v. Peniston*, 18 Wall. 5.   As explained in the opinion of the court in the latter case, the tax there was upon the property of the company and not upon its franchises or operations.   18 Wall. 35, 37."

The exact question here presented was before the supreme court of California in the case of *Western Union Tel. Co. v. Visalia, supra*, where the power to tax the franchise of the company was denied, on the theory that an ordinance passed by the city purporting to confer rights on the company was not a franchise but simply a police regulation.   The court said:

"If it can be construed as an attempted granting or an original franchise to operate a telegraph line through the streets of the city it would be merely an empty form of

granting what the plaintiff already had and of which the city could not deprive it.   The plaintiff had that right not only from the act of Congress above referred to but also from section 536 of our Civil Code, which provides that 'telegraph corporations may construct lines of telegraph along and upon any public road or highway.'   But we do not think that the ordinance purports to grant any 'franchise.'   While the appellant had the right, of which the city could not deprive it, to construct and operate its lines along the streets of the city, nevertheless it could not maintain its poles and wires in such a manner as to unreasonably obstruct and interfere with ordinary travel, and the city had the authority, under its police power, to so regulate the manner of plaintiff's placing and maintaining its poles and wires as to prevent unreasonable obstruction of travel.   And we think that the ordinance in question was not intended to be anything more, and is nothing more, than the exercise of this authority to regulate.   But such regulation is not the granting of a franchise; it is a restriction of and burden upon a franchise already existing; it is not an original and affirmative granting of anything in the nature of a franchise."

The company possessed, under its Federal franchise, the right to do business upon all the roads and highways in the county of Pierce, whether within or without incorporated cities and towns.   This right could not be denied.   The power of the city was limited to its right to regulate the use of the privilege granted by Congress.   It might provide, that poles and wires should be carried over certain streets; that the wires should be carried on poles or buried in the ground; that travel should not be unreasonably obstructed, and that poles should be of a certain height, and other like incidents. Beyond this it had no power to go.   The ordinance relied upon did not grant a franchise.   From all the cases, we deduce the principles, that a corporation doing an interstate business under a Federal franchise must, like the domestic concern, subject all of its property to the taxing power of the state; that a franchise tax arbitrarily levied cannot be sustained, because it may result in the interruption of the functions or conveniences of government; that the property

of such corporation may be taxed by the state upon a valuation fixed with reference to its use and earning power, and although the right to do business be called a franchise, it may be included as an element in fixing value; that courts will not then, in the absence of fraud, inquire into the methods adopted by the state in arriving at such valuation; that such methods of taxing corporations holding a Federal franchise are sanctioned by the courts upon the theory of a property tax, notwithstanding the value of the franchise is considered as an element in fixing such valuation.

The reason for these rules is apparent. The one method favored by the courts may be enforced by resort to a court of equity having power to declare a lien and provide for its payment, while an arbitrary tax of a Federal franchise could not be enforced. It could not be sold, nor its use enjoined, for the very obvious reason that the government's interest is such that no process or procedure of the state can operate to dispossess the holder of the privilege granted by the government. It follows that, in so far as Pierce county has sought to tax the franchise of the company, the attempt was ineffectual. It was a void effort to tax a Federal franchise without graduating its value according to the value of all its property within the state. Inasmuch as the ordinance of the city of Tacoma, relied on by appellant, conferred no rights other than those already possessed by the company, but was in effect a police regulation, there was no right of taxation on that account. The county of Pierce has not brought itself within any approved method for the taxation of intangible property sanctioned by the courts, and the restraining order was properly issued by the court below.

It is further insisted that, because the company did not schedule for taxation its right of way over the Northern Pacific right of way and its contract with the Associated Press, it should not be heard to question the attempt of an assessment of its franchise. This might be true were the franchise a taxable quantity. Having decided that it was

not taxable in the manner, or, it might be said, at all under any law of the state of Washington then existing, the rule cannot be held to apply.

The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.