[No. 29367. Department One. November 27, 1944.]

THE CITY OF SEATTLE, *Appellant*, v. WESTERN UNION TELEGRAPH COMPANY, *Respondent*.[1]

[1] Reported in 153 P. (2d) 859.

*A. C. Van Soelen* and *J. Ambler Newton,* for appellant.

*McMicken, Rupp & Schweppe* (*Francis R. Stark,* of counsel), for respondent.

JEFFERS, J.—This action was instituted by the city of Seattle, a municipal corporation, against Western Union Telegraph Company, a corporation, for the purpose of obtaining judgment against defendant in the sum of $3,010, claimed to be due from defendant by virtue of ordinance No. 72436, which became effective March 27, 1943, and which provided for the payment by defendant of certain compensation for its use of plaintiff's streets.

Defendant's answer admits the passage of the ordinance, the demand made upon defendant for the amount claimed to be due thereunder, and the refusal by defendant to pay the sum demanded, or any sum; and denies the other ma-

terial allegations of the complaint. As an affirmative defense, defendant alleges that, long prior to March 28, 1890, defendant was engaged in rendering interstate and intrastate telegraph service in the city of Seattle and elsewhere throughout the United States, and had long prior to that date filed with the postmaster general of the United States its written acceptance of the restrictions and obligations required by the act of Congress of July 24, 1866 (14 Stat. 221); that, on March 28, 1890, and long prior to the passage of the act effective March 28, 1890 (Laws of Washington 1889-1890, p. 292), defendant maintained in the streets of Seattle its telegraph lines necessary in the conduct of its business, such streets being kept up and maintained by the city; that ever since that date it has maintained its telegraph lines in the streets of Seattle.

To this affirmative defense, plaintiff interposed a demurrer, on the ground that the facts therein set forth did not constitute a defense to the action.

The demurrer was overruled, and plaintiff, by its reply, admits that there were streets in the city of Seattle before March 28, 1890, which were kept up and maintained by it, and admits that defendant now maintains telegraph lines in its streets, but denies the other allegations of the affirmative defense.

The facts in this case were stipulated, and, in so far as material herein, the stipulation provides: That the city of Seattle is a municipal corporation of the first class; that defendant is a corporation, organized and existing under the laws of the state of New York; that on February 23, 1943, the city council of Seattle passed ordinance No.72436, which ordinance is attached to the stipulation and by reference made a part thereof; that the ordinance, if valid, became effective March 27, 1943.

The ordinance provides that defendant shall pay into the city treasury a reasonable fee or charge for its use of the city's streets, according to the following schedule: Poles, one dollar per annum; aerial cable, per wire mile, fifteen cents per annum; aerial line wire, per mile, five dollars per annum; underground conduit, duct foot, two cents

per annum; underground cable, mile wire, five cents per annum. The ordinance then provides that the fees charged for the first year shall be delinquent sixty days from the effective date of the ordinance, and thereafter shall be delinquent on January 15th of each year; that delinquent sums shall draw interest at the legal rate; that should the company fail or refuse to pay according to the above schedule, the corporation counsel is authorized and directed to take such action as may be necessary to collect the same. The city comptroller is then directed to serve a certified copy of the ordinance upon defendant in the manner provided by law for the service of legal process.

The stipulation further provides that a certified copy of the ordinance was duly served on defendant; that, on March 27, 1943, and at all times thereafter, down to and including December 31, 1943, defendant maintained in the streets of the city, and used in the conduct of its business, the following:

"Poles — 99 (100% ownership)
"Poles — 38⅓ (jointly owned-converted to 100%)
"Aerial Cables — 295 miles wire
"Aerial line wire — 5 miles
"Underground conduit — 180,067 duct feet
"Underground cables in said conduit — 2366 Miles wire";

that the application of the rates specified in the ordinance to the number of poles, miles of wire, and duct feet of underground conduit is as follows:

"Poles — 99 (100% ownership) $ 99.00
"Poles — 38⅓ (jointly owned-converted to 100%) 38.33
"Aerial Cables — 295 miles wire 44.25
"Aerial line wire — 5 miles 25.00
"Underground conduit — 180,067 duct feet 3601.34
"Underground cables in said conduit — 2366 miles wire 118.30
 —————
 $3926.22";

that there are two hundred eighty days between March 27, 1943, and December 31, 1943, and in accordance with the facts stipulated, if the ordinance is valid, the fee demandable by the city from defendant for two hundred eighty days in 1943 is $3,010.

It is further stipulated that on April 9, 1943, the city mailed to defendant a statement of the amount claimed to be due from defendant for the calendar year 1943, deducting the elapsed period; that payment to the city under the ordinance, if the ordinance is valid, became delinquent May 26, 1943; that defendant has refused to pay the stipulated amount or any part thereof.

The stipulation further states that the city of Seattle was originally created by a special act of the legislative assembly of the territory of Washington, which act was approved by the governor of the territory on December 2, 1869; that thereafter various amendatory acts were passed; that on February 4, 1886, the governor of the territory approved an act entitled "An Act to revise and amend the charter of the city of Seattle"; that such special act, approved February 4, 1886, is set forth in Laws of Washington Territory, 1885-1886, at pages 238 to 272, inclusive, and such special act is, by reference, made a part of the stipulation of facts; that such special act was not thereafter amended or repealed, and remained in full force and effect until October 1, 1890; that, long prior to March 28, 1890, defendant was engaged in rendering interstate and intrastate telegraph service in the city of Seattle and elsewhere throughout the United States, and long prior to that date duly filed with the postmaster general of the United States its written acceptance of the restrictions and obligations required by the act of Congress of July 24, 1866 (14 Stat. 221), and ever since filing such written acceptance it has been subject to, and has complied with, such act; that, on March 28, 1890, and long prior to the passage of such act, defendant maintained its telegraph lines necessary in the conduct of its business in the streets of Seattle, which streets were kept up and maintained by the city; and that ever since that date it has maintained its telegraph lines in the streets of such city.

The cause came on for hearing before the court on March 13, 1944, on the stipulated facts, and the court thereafter, on March 20, 1944, made and entered findings of fact, conclusions of law, and judgment. Based upon the stipulated

facts, the court concluded that ordinance No. 72436 of the city of Seattle was invalid as to defendant, and that the action should be dismissed. Judgment was entered in accordance with the above conclusion, and this appeal by plaintiff followed.

Error is assigned in overruling the demurrer to the affirmative defense; in concluding that ordinance No. 72436 was invalid as to respondent; and in dismissing the action.

Appellant states that all its assignments of error present the same question and will be discussed together, and that its contentions are:

(1) That the act of March 28, 1890 (Laws 1889-90, p. 292, Rem. Rev. Stat., § 11352 [P. C. § 4715]) is not a state franchise for the use, by telegraph companies then existing, of streets of Seattle without the city's consent, either express or implied; (2) that legislative grants are to be strictly construed in favor of the public and against the grantee; (3) that the act of March 24, 1890 (Laws 1889-90, p. 218, Rem. Rev. Stat., §§ 8966, 8967 [P. C. §§ 678, 713]) delegated to first-class cities full control of streets, which includes the power to impose a reasonable fee for the use thereof, and that this act is consistent with Rem. Rev. Stat., § 11352, *supra*; (4) that the act delegating full power of its streets is to be liberally construed in favor of the city; (5) that this delegation of full control is not inconsistent with the act of March 28, 1890 (Laws 1889-90, p. 292, Rem. Rev. Stat., § 11352), relating to telegraph and telephone companies; (6) that the rights granted by the post roads act of 1866 to telegraph companies are permissive, and the act does not grant a property right in the highways of the state, nor does it foreclose the imposing of a reasonable fee for street use.

Respondent's general contention is that appellant has no power to pass any such ordinance as here involved, which would be applicable to respondent, for the reason that respondent's right to use the streets of the city free of charge was granted by the state statute passed March 28, 1890 (Rem. Rev. Stat., § 11352), and that the right so granted cannot be thereafter modified, impaired, altered,

or abrogated, even by the state, much less by an agent of the state.

 We do not believe there is or could be any real difference of opinion as to the effect of the Federal post roads act of 1866, in so far as the rights of respondent to operate on and over the streets of appellant city are concerned. The act last mentioned will be found in 14 U. S. Statutes at Large, p. 221, chapter CCXXX, and, in so far as material, provides:

"That any telegraph company now organized, or which may hereafter be organized under the laws of any State in this Union, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of Congress, and over, under, or across the navigable streams or waters of the United States: *Provided*, That such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads. . . .

"Sec. 4. . . . That before any telegraph company shall exercise any of the powers or privileges conferred by this act, such company shall file their written acceptance with the Postmaster-General of the restrictions and obligations required by this act."

The privileges and obligations of the act were accepted by respondent on June 8, 1867. See *Western Union Tel. Co. v. Lakin*, 53 Wash. 326, 101 Pac. 1094.

This court, in the case last above cited, has pretty well defined the rights acquired by respondent to do business upon all the roads and highways of this state and the streets of incorporated cities and towns. In referring to the post roads act, the court stated:

"The company possessed, under its Federal franchise, the right to do business upon all the roads and highways in the county of Pierce, whether within or without incorporated cities and towns. *This right could not be denied.* The power of the city was limited to its right to regulate the use of the privilege granted by Congress. It might pro-

vide, that poles and wires should be carried over certain streets; that the wires should be carried on poles or buried in the ground; that travel should not be unreasonably obstructed, and that poles should be of a certain height, and other like incidents. Beyond this it had no power to go." (Italics ours.)

The cited case recognizes, as do the Federal courts, the right of each state to tax all property, real and personal, of respondent, within its borders, although such property is employed in interstate commerce, and notwithstanding respondent's acceptance of the Federal franchise. It is interesting to note the following statement found in the *Lakin* case, *supra*, as it indicates, we think, the attitude of Congress, the states generally, and the courts at that time and prior thereto, in regard to respondent and its business:

"The nature of the business carried on by the company, its relation and importance to the Federal government, induced Congress to fix upon it a Federal character, and although it was organized under the laws of the state of New York, it has extended its lines and business throughout the states and territories under an act of Congress in the nature of a franchise, and which we shall refer to as the Federal franchise, passed July 24, 1866 (U. S. Rev. Stats. § 5263)."

The post roads act was construed in *Western Union Tel. Co. v. Massachusetts,* 125 U. S. 530, 31 L. Ed. 790, 8 S. Ct. 961. This action was commenced by the proper authorities of the state to enforce the collection of a tax levied by the state upon the telegraph company, and to enjoin it from further operation within the territorial limits of Massachusetts until the tax was paid. The court, in referring to the post roads act, stated:

"This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the Federal government, carries with it any exemption from the ordinary burdens of taxation.

"While the State could not interfere by any specific statute *to prevent* a corporation from placing its lines along these post-roads, *or stop the use of them after they were placed there,* nevertheless the company receiving the benefit of the laws of the State for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support." (Italics ours.)

The court held the tax levied was a lawful tax, and affirmed the judgment of the lower court in so far as the tax was concerned, but reversed the lower court in so far as it had granted injunctive relief against the company, stating in regard thereto that the effect of the injunction, if obeyed, would be to utterly suspend the business of the telegraph company and defeat all its operations within the state of Massachusetts. We quote from the opinion:

"If the Congress of the United States had authority to say that the company might construct and operate its telegraph over these lines, as we have repeatedly held it had, the State can have no authority to say it shall not be done."

In the case of *Western Union Tel. Co. v. Superior Court,* 15 Cal. App. 679, 115 Pac. 1091, 1100, the court, after referring to and discussing the case of *Pensacola Tel. Co. v. Western Union Tel. Co.,* 96 U. S. 1, 24 L. Ed. 708, stated that the principles enunciated in the last-cited case have never been receded from or modified, and that from these principles the following incontrovertible propositions flow:

"1. That telegraph corporations that have accepted the restrictions and obligations prescribed as to such corporations by Congress are not, primarily, beholden to any state for their right to transact a telegraph business therein; that the sole source of their authority to enter any of the states or territories of the United States, where there are military and post roads and government waterways, for the purpose

of doing busines therein is in the acts of the federal Congress. 2. That no state has the power, under the indicated circumstances, *to exclude such corporations from the right or privilege of carrying on the business for which they are formed within its borders;* that, while the state may impose upon such corporations, as it may upon all corporations of whatever kind or nature, organized and existing under the laws of another state, *reasonable regulations,* and to that end prescribe and require certain reasonable prerequisites to the exercise of the authority conferred on them by Congress to do business in such state, yet no state will be permitted, whether under the guise of regulation or otherwise, to enact any legislation the effect of which would or might, practically be to prevent them from doing business in such state, or in effect result in an attempt on the part of such state to regulate commercial intercourse between its citizens and those of other states, or to control the transmission of all telegraphic correspondence within its own jurisdiction." (Italics ours.)

May we state, in concluding our discussion of the rights and obligations received and incurred by those communication companies accepting the post roads act, that a reading of the *Pensacola Telegraph Co.* case, *supra,* will reveal much of the background that has influenced Congress and the several states to pass legislation favorable to such companies.

As we understand respondent's position in regard to the post roads act, it is that, by virtue of the act and respondent's acceptance of the privileges and obligations imposed thereby, respondent was lawfully occupying and using the streets of Seattle at the time of statehood and at the time of the passage of the act of 1890, to which we shall later refer. Clearly, the authorities uphold respondent's position.

Respondent is not claiming that its real and personal property within this state is not subject to taxation by the proper taxing authorities, nor that it is not subject to reasonable regulations. Nor does respondent contend that, merely because it has accepted the privileges of the post roads act, it is exempted from liability to pay the sums provided by the ordinance here being considered.

While it may be admitted that, notwithstanding the post roads act, the state may make a reasonable charge for the use of its highways and streets by a telegraph company, it is not compelled to do so. *Arkansas State Highway Commission v. Southwestern Bell Tel. Co.*, 178 S. W. (2d) (Ark.) 1002.

Having in mind the history of legislation relative to telegraph companies, we now come to the main question in this case; namely, did the state, by the act of 1890, grant to respondent the right to use the streets of Seattle, without the payment of compensation or rental for such use?

Article XII, § 19, of our state constitution provides:

"Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, *shall have the right to construct and maintain lines of telegraph and telephone within this state*, and said companies shall receive and transmit each other's messages without delay or discrimination, and all of such companies are hereby declared to be common carriers and subject to legislative control. Railroad corporations organized or doing business in this state shall allow telegraph and telephone corporations and companies to construct and maintain telegraph lines on and along the rights of way of such railroads and railroad companies, and no railroad corporation organized or doing business in this state shall allow any telegraph corporation or company any facilities, privileges, or rates for transportation of men or material or for repairing their lines not allowed to all telegraph companies. The right of eminent domain is hereby extended to all telegraph and telephone companies. The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section." (Italics ours.)

Pursuant to the above constitutional provision, the legislature of this state at its first session after statehood passed an act entitled "Telegraph and Telephone Companies; to Provide for the Regulation of." Laws 1889-90, p. 292. Section 5 of this act provides:

"Any telegraph or telephone corporation or company, or the lessees thereof, doing business in this state, shall have the right to construct and maintain all necessary lines of telegraph or telephone for public traffic along and upon any public road, street or highway, along or across the right-

of-way of any railroad corporation, and may erect poles, posts, piers or abutments for supporting the insulators, wires, and any other necessary fixture of their lines, in such manner and at such points as not to incommode the public use of the railroad or highway, or interrupt the navigation of the waters: *Provided,* That when the right-of-way of such corporation has not been acquired by or through any grant or donation from the United States, or this state, or any county, city or town therein, then the right to construct and maintain such lines shall be secured only by the exercise of right of eminent domain, as provided by law: *Provided further,* That where the right-of-way as herein contemplated is within the corporate limits of any incorporated city, the consent of the city council thereof shall be first obtained before such telegraph or telephone lines can be erected thereon."

This section has never been amended, and is now Rem. Rev. Stat., § 11352.

Appellant, on page 34 of its brief, admits that many states have passed laws granting rights to telegraph companies similar to § 536 of the civil code of California, and similar to § 11352, *supra,* except that such statutes contain no provision such as is contained in the second proviso of our statute. Appellant further admits that these statutes have been interpreted by the supreme courts of the respective states as being direct grants from the state, which, upon acceptance by construction and operation, become contracts which may not be impaired by subsequent legislation. However, appellant contends that no franchise was granted by § 11352, *supra,* without the city's consent; that the proviso applies alike to telegraph companies lawfully operating upon the streets of Seattle at the time of the passage of the act of 1890, and to those which subsequently should seek to obtain permision to operate over and upon such streets. We shall first discuss the proviso.

Appellant argues that legislative grants are to be strictly construed in favor of the public, citing 23 Am. Jur. 726, § 16. Granting that the above is a correct general statement of the law, let us look to the wording of this proviso:

"Provided further, That where the right-of-way as herein contemplated is within the corporate limits of any incor-

porated city, the consent of the city council thereof shall be first obtained *before such telegraph or telephone lines can be erected thereon.*" (Italics ours.)

Following the quotation by appellant from 23 Am. Jur. 726, and as part of the same section, is the following:

"But while it is true that such grants will not be sustained by doubtful words and that ambiguity vitiates them, yet this rule is qualified by another: that such grant and the statute making it must receive a reasonable construction and not be so construed as to defeat the intention of the legislature, and that the ambiguity must be such as is not removed by *the settled rules of construction.* . . . It is also a well-known rule of construction that so long as the language of the statute or ordinance is plain or unambiguous, it is not subject to interpretation or open to construction, but must be accepted and enforced as it is written." (Italics ours.)

What are the settled rules of construction in regard to provisos? This court announced the rule to be followed in this state in *Sackman v. Thomas,* 24 Wash. 660, 64 Pac. 819, in almost the identical words of Judge Story in *United States v. Dickson,* 15 Pet. (40 U. S.) 141. We quote from the opinion in the *Sackman* case:

"Now, it is a rule of construction that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause, and those who set up any such exception must establish it as being within the words, as well as within the reason, thereof."

It is our opinion the language used in the proviso is plain and unambiguous. We are clearly of the opinion this proviso was intended to and does operate in the future and not in the past. In other words, it is our opinion that the proviso applies only to those telegraph or telephone companies which should for the first time, subsequent to the effective date of the act of 1890, seek permission of an incorporated city, having the power to grant the right upon

condition, to operate upon and along its streets, and that it was not intended to, nor does it, apply to a telegraph company which was lawfully operating upon and along the streets of such city at the time of the effective date of the act.

It seems to us the words of the proviso plainly so indicate. It also seems to us that our construction of this proviso is the reasonable one, when we consider the attitude of Congress, the different states, and the courts in regard to communication companies, and especially respondent at the time of the passage of the act of 1890. We again call attention to the case of *Western Union Tel. Co. v. Lakin*, 53 Wash. 326, 101 Pac. 1094.

As to the interpretation to be placed upon a proviso, see, also, *Tabb v. Funk*, 170 Wash. 545, 17 P. (2d) 18; 50 Am. Jur. 458, § 437; 59 C. J. 1089, § 639.

In conclusion on this question, we are further of the opinion it is reasonable to assume that the legislature did not desire or intend to leave to incorporated cities wherein respondent was operating and had invested large sums of money in the furtherance of its business, at the time of the passage of the act of 1890, the right to require such telegraph companies to obtain the consent of such city before the grant became effective.

The rights and obligations of respondent, then, must be determined from the enacting provision of Rem. Rev. Stat., § 11352, which was § 5 of the original act of 1890.

From appellant's brief, we get the impression that appellant does not seriously contend that § 11352, *supra*, except for the proviso, is not a direct grant from the state to telegraph companies, which, upon acceptance by any such company by construction and operation, becomes a contract which may not be impaired by subsequent legislation.

It is almost the universal rule, as admitted by appellant on page 34 of its brief, that the supreme courts of those states which have statutes similar to that of California and similar to § 11352, *supra*, except for the proviso, have held that such acts were direct grants from the

state, which upon acceptance by construction and operation, or by operation and maintenance, become contracts which may not be impaired by subsequent legislation.

There can be no question but that respondent has complied with the test relative to acceptance, as it has continuously, since the passage of the act of 1890, operated and maintained upon and along the streets of Seattle its telegraph lines.

*Western Union Tel. Co. v. Hopkins,* 160 Cal. 106, 116 Pac. 557, is, we think, a well-reasoned case. It deals not only with the rights acquired by the telegraph company upon and over the streets of Los Angeles, by virtue of the act of Congress, but also with the effect of § 536, California civil code, which, as amended in 1905, now reads:

"Telegraph or telephone corporations may construct lines of telegraph, or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this state, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters."

The *Hopkins* case, *supra,* was decided in 1911. We quote from the cited case:

"Assuming that section 536 of the Civil Code was a grant of the right to such use of the streets, we are of the opinion that it must be held, to use the language of the United States circuit court of appeals in *Sunset Tel. & Tel. Co. v. Pomona,* 172 Fed. 837, [97 C. C. A. 251], that the maintenance and operation of such system 'was an acceptance by it of the provisions of that statute, which thereby became a contract between the company and the state, secured by the constitution of the United States against impairment by any subsequent state legislation.' In this connection it should be said that learned counsel for plaintiff assert that inasmuch as it constructed its lines in the streets of Los Angeles in the year 1870, prior to the adoption of section 536 of the Civil Code, it never manifested any acceptance of the rights offered by the statute and has exercised no franchise thereunder. Of course, the grant of the right to 'construct' and 'erect' contained in the section necessarily implied the right to maintain. Although the

construction was before the adoption of the Civil Code section, the continued maintenance of exclusive possession of portions of highways without compensation was a sufficient acceptance. It once being established that the act of Congress did not give the right to such exclusive possession without compensation, the maintenance of such possession by plaintiff was necessarily under the Civil Code section, and cannot be attributed to any other authority."

In *Russell v. Sebastian*, 233 U. S. 195, 58 L. Ed. 912, 34 S. Ct. 517, Ann. Cas. 1914C, 1282, we find this statement:

"That the grant, resulting from an acceptance of the State's offer, constituted a contract, and vested in the accepting individual or corporation a property right, protected by the Federal Constitution, is not open to dispute in view of the repeated decisions of this court."

The cited case also indicates that by its acceptance of the grant the company was not limited in its use of the streets to those actually occupied at the time of such acceptance, but is entitled to operate upon such other streets as may be necessary in order to meet the demands of such city and carry out the purpose for which the company was formed.

In the case of *Des Moines v. Iowa Tel. Co.*, 181 Iowa 1282, 162 N. W. 323, the Central Union Telephone Company, a corporation organized under the laws of the state of Illinois, constructed a telephone exchange in the city of Des Moines some time in the year 1882, erecting its poles, etc., upon the streets and alleys of that city. In 1896 the Central Co. sold to the defendant all its physical property, and assigned and transferred to defendant all its franchises and rights to operate its exchanges and toll lines. The Iowa Telephone Company had improved and extended its lines, and had maintained and used same up to the time of the action. On December 30, 1912, the city council of Des Moines passed an ordinance requiring every person or corporation to pay a rental fee of one dollar for each and every telegraph or telephone pole used, possessed, or maintained upon its streets, and one dollar per mile of wires owned or used by any telegraph or telephone company. An action was brought by the city in 1913 to recover rental fees from

defendant for the space occupied by it on the streets. The defendant asserted that, under the legislative grant of authority (McClain's Ann. Code 1882, pp. 374, 375; Code 1873, as amended by Acts 19th Gen. Assem. c. 104), defendant and its predecessor had the right to use and occupy the streets and alleys of the city without securing the consent of the city, and without being liable to the city for the use thereof. Defendant also contended that the city had no power or authority from the legislature to impose a rental for the use of the streets with its poles and wires, and that the legislature, having plenary powers, granted to it the right to use the city streets without compensation, and required no reimbursement to anyone save owners of private property. It was also contended that the legislative grant, after acceptance by defendant and its predecessor, and the investment of large sums on the strength thereof, became a contract, and that the city could not thereafter impose any other conditions or provisions upon the exercise of the power conferred. The defendant conceded the right of the city to exercise its police powers, and also conceded that it was liable to taxation on its property under the law.

Under the section of McClain's Code above referred to, any person or company was authorized to construct a telegraph or telephone line along the public highways of the state. Many statements will be found in the cited case bearing on the question here being considered. We quote:

"That a grant from a city, or the legislature itself, when accepted and acted upon by a telegraph or telephone company, is a contract, and that this contract is entitled to protection, is affirmed by the Supreme Court of the United States in *Boise Artesian Hot and Cold Water Co. v. Boise City*, 230 U. S. 84."

The court held the ordinance was clearly a revenue measure. The opinion further states:

"Under our previous decisions, the defendant was granted, by a legislative body having authority to do so, the right to use these streets without compensation to the city; and, aside from any question regarding the power of the

city to exact license fees, pass regulatory acts in virtue of its police power, or to tax the company's property, it has no right to recover for the use and occupation of its streets, against a public service corporation such as a telegraph, telephone or railway company, which had been given express legislative authority to use the streets and highways."

In the case of *Northwestern Tel. Exch. Co. v. Minneapolis,* 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175, the court construed, as applicable to city streets, a statute giving to telegraph and telephone companies the right to use the *roads* and *highways* of the *state.* This case holds, in line with the authority generally, that a grant by the state, when accepted by a telephone company, becomes a contract which cannot be impaired by subsequent legislation. See, also, *Holmes Electric Protective Co. v. Williams,* 228 N. Y. 407, 127 N. E. 315.

From the cases cited, which support the almost universal rule, we are of the opinion that the act of 1890 was an express grant to a telegraph company, which had been lawfully operating upon the streets of Seattle prior to statehood and prior to the passage of the act, of the right to operate, construct, and maintain along and upon any public road or street in this state, without compensation being paid for such use to the state or any of its agencies, all lines of telegraph necessary for the purpose for which the company was formed; that the grant thus made by the state did not require that a telegraph company having the status of respondent be required to obtain the consent of any state agency to make such grant binding, all that was required being that the grant be accepted; that respondent accepted such grant by continued operation and maintenance of its lines upon the streets of Seattle after the passage of the act; that, by such acceptance, the grant became a contract between the state and respondent, which could not thereafter be impaired by the state or any of its agencies; that the grant included not only the right to operate, construct, and maintain, without compensation, its lines upon the streets of Seattle so occupied at the time of the passage of the act, but also upon such other and additional

streets as might be necessary in furnishing the public the service for which respondent was formed.

What we have stated herein is not to be understood as exempting respondent from the effect of reasonable regulatory ordinances, nor of exempting it from the payment of taxes properly assessed upon its personal and real property within the state of Washington.

For the reasons assigned, we are of the opinion the ordinance herein referred to, not being in any sense a regulatory measure, is invalid as applied to respondent. We have not discussed all of appellant's assignments of error, because the conclusions reached make it unnecessary.

We do not deem it necessary to discuss in detail the authority cited by appellant, chiefly for the reason that we do not think the authority cited is applicable to a situation such as presented by the admitted facts in this case. However, we shall refer to a few of the cases. To sustain appellant's first contention, "No State Franchise," no authority is cited. We have specifically answered appellant's second contention, that legislative grants are to be strictly construed. Under its contention that full control of its streets is not curtailed by the act of 1890, appellant cites *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116; *State ex rel. Tacoma v. Sunset Tel. & Tel. Co.,* 86 Wash. 309, 150 Pac. 427; *State ex rel. Ellertsen v. Home Tel. & Tel. Co.,* 102 Wash. 196, 172 Pac. 899, stating that these cases should be decisive of the issue. While in view of the conclusions reached by us it becomes immaterial what powers may have been granted to cities of the first class under Rem. Rev. Stat., §§ 8966, 8967, we shall refer to the cases last-above cited, for we think they plainly indicate that the court did not have before it in each case a communication company lawfully operating upon the roads and streets of this state prior to statehood and prior to the passage of the act of 1890.

The very first words of the opinion in the case of *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane, supra,*

indicate the reason why the case is not applicable to the facts in this case. We quote:

"The appellant (plaintiff) is a corporation created under the laws of the state for the purpose of constructing and operating a telephone line and system within this state between the Canadian boundary on the north and the city of Spokane on the south. *It made application to the city of Spokane for the city's consent to erect its telephone poles and construct its wires through the streets of the city.* In its application it offered to submit to such reasonable rules and regulations as might be imposed by the city. Upon consideration of the application by the city council, such consent was refused. Appellant thereafter instituted proceedings in the nature of mandamus to compel the city to give its consent to the construction and operation of appellant's telephone system, and that the city be required to prescribe reasonable rules and regulations therefor." (Italics ours.)

It does not appear that appellant had in any manner operated upon the streets of Spokane prior to its application. It is therefore evident that appellant could not and did not claim any rights based upon its use of the streets prior to the passage of the act of 1890.

The facts in the case of *State ex rel. Tacoma v. Sunset Tel. & Tel. Co., supra,* are somewhat complicated, but, in so far as the case has any application to the question here involved, it appears that in 1905 the city of Tacoma granted a twenty-five year franchise to one Webster to operate an automatic telephone system and telegraph system in Tacoma. The franchise, among other things, contained a provision prohibiting Webster from selling or assigning any of the rights or privileges granted by the franchise, without the city's consent. Webster subsequently, with the consent of the city, assigned his franchise to the Home Telephone Company. In 1911 the Home Telephone Company became insolvent, and its property was sold at judicial sale. At this sale the property was purchased by the Sunset Telephone & Telegraph Company. Thereafter, the city by ordinance attempted to forfeit the franchise granted to Webster, because of a claimed breach of the

condition of the ordinance granting such franchise. While the court held that the city had the right to attack the non-assignment clause of the Webster franchise, by virtue of the power vested in it to regulate and control the use of its streets, this court held that no cause for forfeiture had been shown. Here again it is apparent that a different factual situation existed. Webster had no rights in or upon the streets of Tacoma prior to 1905.

Respondent does not contend in the instant case, nor does this opinion hold, that cities of the first class may not impose upon a communication company, which, subsequent to the passage of the act of 1890, for the first time seeks permission to operate upon and along the streets of such city, reasonable conditions as a prerequisite to the right of such company to construct its lines and operate upon the streets of such city.

The case of *State ex rel. Ellertsen v. Home Tel. & Tel. Co., supra,* is not applicable, for the reason that it does not appear that this company was operating on the streets of Spokane prior to 1905, at which time it apparently obtained a franchise from the city.

We have considered all the cases cited by appellant and we do not believe the conclusions we have reached, based upon the facts in this case, are contrary to any of our own decisions or contrary to the great weight of authority.

For the reasons herein assigned, the judgment of the trial court is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.

January 13, 1945. Petition for rehearing denied.