[No. 12689.   Department One.   July 21, 1915.]

# THE STATE OF WASHINGTON, *on the Relation of the City of Tacoma, Respondent*, v. SUNSET TELEPHONE & TELEGRAPH COMPANY, *Appellant.*[1]

TELEGRAPHS AND TELEPHONES—FRANCHISES — POWER TO GRANT— CONDITIONS—STATUTES—CONSTRUCTION.   A city of the first class has power to grant a telephone franchise for the use of the city's streets and alleys, with any lawful conditions attached against sales or transfers to other companies without the consent of the city, or for forfeiture upon nonperformance of its undertakings, under Rem. & Bal. Code, § 7507, subd. 7, empowering first class cities to regulate and control the use of streets and alleys and to authorize or prohibit the use of electricity at, in or upon them, and to prescribe the terms and conditions upon which the same may be used and to regulate the use thereof.

SAME—FRANCHISE—POWER TO GRANT—STATUTES—IMPLIED REPEAL. Rem. & Bal. Code, § 7507, subd. 7, empowering cities of the first class to grant telephone franchises for the use of its streets and alleys, was not impliedly repealed by the enactment of the general telephone franchise act of 1890, Id., § 9300 *et seq.*

SAME — FRANCHISES — CONDITIONS — ACCEPTANCE.   Where a telephone franchise with attached conditions was accepted by the grantee, the franchise itself would be unauthorized if the qualifications and conditions imposed were beyond the power of the city, except as the terms and conditions are deemed subject to the general law.

SAME—FRANCHISES—CONDITIONS AGAINST ALIENATION—VALIDITY— PUBLIC POLICY.   A condition in a telephone franchise ordinance that the grantee shall not sell or transfer the franchise or telephone system, except to a corporation to be organized by the original grantee, and expressly forbidding the transfer to any other telephone company without the consent of the city, evidently intended to maintain competition and prevent monopoly, is not void as against public policy, nor *ultra vires.*

SAME—FRANCHISES—CONDITIONS AGAINST ALIENATION—MORTGAGES —INVOLUNTARY SALE.   A condition in a telephone franchise ordinance that the grantee shall not sell or transfer the franchise or telephone system, except to a corporation to be organized by the original grantee, and expressly forbidding the transfer to any other telephone company without the consent of the city, is not violated,

[1]Reported in 150 Pac. 427.

and a cause of forfeiture does not arise, by the giving of a volun-
tary mortgage, followed by an involuntary foreclosure and sale un-
der which another telephone company acquired the franchise and
telephone system; in view of Rem. & Bal. Code, § 520, which pro-
vides that franchises may be mortgaged and sold under execution
or foreclosure, and Const., art. 12, § 8, providing that no corpora-
tion shall alienate any franchise so as to relieve the franchise or
property from the liabilities of the grantee.

SAME—FRANCHISE — FORFEITURE — COMPLIANCE WITH CONDITIONS.
A telephone franchise ordinance, referring in the first section to an
automatic telephone system, but in the granting clause authorizing
the grantee to use the streets for the transmission of sounds and
conversation by electricity, and to construct an automatic telephone
system, and a telegraph system, does not require the grantee to
operate an automatic system exclusively; and abandonment of the
automatic feature for a manual system is not ground for the for-
feiture of the franchise for failure to comply with its terms; for-
feitures being abhorred in the law and avoided if possible.

SAME. In such a case, the failure to furnish the city with sixty
automatic telephones and desk extensions as provided in the ordi-
nance, would not be ground for forfeiture of the franchise, where
the grantee was furnishing the city with the required number of
manual telephones.

Appeal from a judgment of the superior court for Pierce
county, Card, J., entered November 27, 1914, in favor of the
plaintiff, upon sustaining a demurrer to the answer, in pro-
ceedings to enforce the forfeiture of a franchise. Reversed.

*Pillsbury, Madison & Sutro* and *Bates, Peer & Peterson,*
for appellant.

*T. L. Stiles* and *Frank M. Carnahan,* for respondent.

HOLCOMB, J.—The respondent brought action against
appellant and Home Telephone Company of Puget Sound in
the nature of *quo warranto,* to enforce the forfeiture of a
franchise. The information or complaint shows that, in De-
cember, 1905, the city council of the city of Tacoma passed
ordinance No. 2,522, granting a telephone and telegraph
franchise. The title and material parts of the ordinance
were as follows:

"Ordinance No. 2522. An ordinance granting to Edward E. Webster, his successors and assigns, the right to lay and maintain underground conduits, cables and wires, and to construct necessary manholes, make house connections, and to erect poles and thereon to fasten wires in the streets and alleys, and to operate an automatic telephone system, and telegraph system and business, in the city of Tacoma.

"Be it ordained by the City of Tacoma:

"Section 1.    That Edward E. Webster, his successors and assigns, be and is hereby granted for a period of twenty-five years, the right, privilege and franchise to erect poles with the necessary supports, cross-arms and fixtures, and to string wires and cables thereon, and to construct underground conduits, together with the necessary manholes and other appliances, and to lay, place and stretch wires and cables therein and along, over, upon, under and across the streets, alleys, avenues and public places of the city of Tacoma, Washington, for the transmission of sounds, signals, conversation and intelligence through and over said wires and cables by means of electricity, and to construct, establish, equip, install, maintain and operate, an automatic telephone system and a telegraph system, and to conduct a general telephone and telegraph business within said city of Tacoma."

Section 2 provides that the ordinance shall not be deemed exclusive.

Section 3 provides for the manner in which conduits shall be laid and excavations made in the streets.

Section 4 provides the manner in which traps and manholes shall be constructed.

Section 5 provides the manner in which the poles shall be erected, and provides that the city shall have the right to have certain poles removed and the wires placed underground.

Section 6 provides that, before the construction of the conduits, the grantee shall file with the commissioner of public works of the city of Tacoma detailed plans and specifications, etc., and that before work shall be done the same shall be approved by the commissioner of public works or the city council.

Section 7 provides that, in the event of change of any grade, the laying of a sewer, or the making of any public improvement in any of the streets and alleys along or under which the said conduits may be placed, which shall render necessary any changes in the position of the conduits, the grantee, or its successors and assigns, shall move the same at his, or its, own cost and expense, and failing to do so within a reasonable time the city may do so at the expense of the grantee.

Section 8 provides for the holding of the city harmless from any cost or damages during the construction of the work, and that the grantee shall put up a bond for ten thousand dollars, conditioned to hold the city harmless.

Section 9 provides for the cutting, raising or removal of any of the wires of the grantee, so as to allow moving of buildings through the streets.

Section 10 provides that the city shall have the right, at any time during the life of this franchise, to purchase, at a reasonable price, the property of the grantee, its successors or assigns, obtained, constructed and maintained under the provisions of this ordinance, and provides for the manner of arriving at the value thereof.

"Section 11. That the said grantee, his successors and assigns, shall within thirty days from the date of the commencement of the operation of said telephone system furnish to the city of Tacoma on demand the telephones necessary for the transaction of the city business not to exceed sixty telephones and fifteen desk extension telephones connected and operated with said system, and shall thereafter maintain and keep the same in repair without expense or charge to said city. Said grantee, his successors and assigns, shall if required by said city, for municipal purposes, furnish space in his conduits for twenty-five pairs of wires and space on his poles equal to one gain to be installed by said city and to be used for fire and police alarm purposes; provided, however, that said city in its use of such space comply with the reasonable plans and rules of said grantee, his successors and assigns, and in no case shall the wires of said city so installed

carry an electric current greater than, nor dangerous to the proper operation of, the wires of said grantee, his successors and assigns.

"Section 12. That the work of constructing said system shall be commenced in good faith within four months of the date of the acceptance of this franchise and shall be continuously prosecuted thereafter in good faith, and such system shall be completed within not more than two and one-half years thereafter, with an ultimate capacity and extent to accommodate at least six thousand subscribers, and if said work be not so commenced, prosecuted and completed and in continuous operation within the time and manner herein specified and if the grantee shall expend in the construction of said telephone system less than fifty thousand dollars during the first six months after commencing the work of construction under this franchise and less than an additional one hundred thousand dollars in the construction of said system within one year thereafter, then this franchise shall be subject to forfeiture."

Section 13 fixes the rates to be charged for telephone service.

"Section 14. That except as hereinafter provided said grantee, his successors and assigns, shall not without the consent of the city evidenced by ordinance passed by two-thirds vote of all the members of the city council, sell or transfer the conduits, poles, wires or appliances of any kind or description or sell, lease, transfer or assign any of the rights or privileges herein authorized or granted to any person, company, trust or corporation now or hereafter engaged in the telephone or conduit business in said city of Tacoma; and shall not at any time enter into any combination directly or indirectly with any person or persons or any corporation concerning the rates to be charged for telephone service; and no officers, directors, employes, or managers of the conduit or telephone system authorized under this franchise shall at any time be in charge of, or officers, directors, employes or managers of, any other conduit or telephone system constructed or being operated in said city; provided, however, that said grantee may assign this franchise to a corporation organized by him under the laws of the state of Washington or some other state of the United States for the

purpose of carrying on a general telephone and telegraph business.

"Section 15. That the person, copartnership, company or corporation who shall own and operate under this franchise, shall during the life of this franchise pay to the city of Tacoma in lawful money of the United States the sum of one per cent of the gross annual receipts of such grantee, his successors and assigns, from the telephone rentals within said city for each and every year, and the city reserves the right to increase the amount of said license fee to 2 per cent at any time after the first five years during the life of this franchise; provided that no increase in the rate of said tax shall be made until all other telephone companies doing business in said city shall be required to pay an equal rate of taxation.

"Said grantee, his successors and assigns, shall on or before the second Monday in January of each year, furnish to the city comptroller of said city a sworn statement of such gross receipts for the previous year's business, and shall on or before the 15th day of January in each year, for the first five years of the life of this franchise pay the amount of one per cent thereof to the city treasurer and after the expiration of said five years shall pay such sum as the city council may require, not exceeding two per cent of such gross receipts. The city comptroller or such other person or persons as the city council of said city shall by resolution appoint for that purpose shall, if said statement is not satisfactory to said city, have the right to inspect the books of grantee, his successors and assigns and this franchise may be forfeited by failure to make the payments herein provided for or by refusal to allow the inspection within ten days after demand therefor duly made."

Section 16 provides for matters that have no bearing on this case.

Section 17 provides for the acceptance of the franchise by the grantee.

Section 18 provides for a deposit with the city treasurer as a guarantee that the grantee will commence construction of said telephone system within a certain time.

"Section 19. That any neglect, failure or refusal to comply with any of the conditions of this franchise or grant shall render the same subject to forfeiture.

"Section 20. By the acceptance of this franchise the grantee, his successors or assigns, hereby expressly agree that when any portion of the city of Tacoma is without telephone service and the number of persons in such locality desiring same shall equal at least one subscriber for every three hundred feet of new pole line required to reach such new subscriber the same shall be installed by said grantee, its successors or assigns, within six months after application is made for same; and it is further expressly agreed that the charges for the same kind of telephone service shall be uniform throughout the city.

"Section 21. The city of Tacoma reserves the right to make any reasonable amendment of this ordinance which necessity may require, having due regard, however, to the vested rights and business interests of the grantee, his successors and assigns."

Webster accepted the ordinance in due time, and the council, at his request, passed ordinance No. 2,694, consenting to his assigning the franchise to the Home Telephone Company of Puget Sound. This ordinance recited the history of the matter, and ordained as follows:

"Section 1. That the consent of the city of Tacoma be and the same hereby is given to the said Edward E. Webster, to assign, transfer, and set over to the Home Telephone Company of Puget Sound, a corporation organized under the laws of the state of Washington, the said franchise and all rights, privileges and authority therein granted by ordinance No. 2,522, entitled, 'An ordinance granting to Edward E. Webster, his successors and assigns, the right to lay and maintain under ground conduits, cables and wires and to construct necessary manholes, make house connections and to erect poles and thereon to fasten wires in the streets and alleys, and to operate an automatic telephone and telegraph system and business in the city of Tacoma.' And the said Home Telephone Company of Puget Sound shall take the same subject to all the terms and conditions set out and contained in said ordinance."

Respondent, in its complaint, after alleging the passage of the ordinance above mentioned, and the other matters stated, set forth that the Home Telephone Company of

Puget Sound constructed, maintained and operated an automatic telephone business in the city, established a large central station, and had subscribers for more than six thousand telephones, whom it furnished with telephone service at the rates prescribed in the ordinance, furnished the city sixty telephones of the value of one hundred dollars per month free of charge, and paid the city one per cent of its gross annual earnings.    Breaches of the terms and conditions of the ordinance were then alleged as follows:

"1.    That the Home Telephone Company of Puget Sound in May, 1911, became insolvent and was unable to continue the operation of its telephone system, and suffered its creditors to seize and sell all of its property by judicial decree, and without the consent of the city suffered the Sunset Telephone and Telegraph Company to become the purchaser at such sale; and that the Sunset Company had been and was a California corporation doing business as a telephone company and operating a telephone system in the city pursuant to rights, privileges and franchises granted by ordinance No. 21, passed March 24, 1884, and certain ordinances amendatory thereof.

"2.    That thereupon the said Sunset Telephone and Telegraph Company, by its managers, servants and agents, took possession of the telephone station of said Home Telephone Company of Puget Sound, in said city, and of all its automatic telephones, and its conduits, poles, wires and appliances of every description, and wrecked, dismantled and destroyed the same as an automatic telephone system, and entirely ceased to operate the same, and deprived said city and its inhabitants of all automatic telephones and of all competition in the telephone business; and deprived said city of the sixty telephones contracted for by said ordinance No. 2,522, and of all revenue from one per cent of the gross receipts of said automatic telephone business; and said Sunset Telephone and Telegraph Company refused to allow subscribers for said automatic telephones who had contracts with said Home Telephone Company of Puget Sound, to retain their automatic telephones already installed within their premises and compelled said subscribers, if they desired telephone service at all, to make new contracts with it for the

same, and allow its Bell telephones to be installed in their place.

"3.   That said Home Telephone Company of Puget Sound and said Sunset Telephone & Telegraph Company have, and each of them has, wholly abandoned the enterprise of constructing and operating the automatic telephone system in said city of Tacoma, contemplated and stipulated for by said ordinance No. 2,522 and said abandonment has continued for more than two years last past; and it is not the intention of either of said defendants to resume the operation of said automatic telephone system in said city, or to furnish the said city or its inhabitants with any competitive telephone system whatever."

On the 27th day of March, 1912, the council passed ordinance No. 4,907, declaring the franchise granted by ordinance No. 2,522 forfeited for the reasons therein and hereinbefore set forth, and repealing the ordinance. This ordinance directed the city attorney to procure from the courts a confirmation of the declaration of forfeiture, and the commissioner of public works to remove the telephone poles, wires, etc., from the streets after sixty days from the time the repealing ordinance should go into effect, and take possession of the manholes and conduits.

Appellant's answer denied breaches of the conditions, and affirmatively averred, among other things, that, under a certain mortgage foreclosure proceeding in the United States circuit court for the western district of Washington, northern division, under a certain mortgage and deed of trust given by the Home Telephone Company of Puget Sound to the Title Insurance and Trust Company to secure bonds issued by the Home Telephone Company, a decree of foreclosure was had, in which it was, among other things, provided that all of the property of the Home Telephone Company of Puget Sound, including the franchise originally granted to E. E. Webster by ordinance No. 2,522 of Tacoma, be sold as a unit; that, after a number of unsuccessful public offers of sale under the decree of sale, on December 9, 1911, the de-

fendant purchased, at public sale under the foreclosure decree, all of the property as a unit, for the sum of $550,000, which sum was accepted and the sale confirmed to defendant by the court, and a deed duly executed and delivered to defendant by a special trustee of the court.

There are further affirmative allegations in the answer tending to show that appellant has complied with every condition of the Home Telephone franchise, except that it does not use the automatic 'phone system,' but furnishes in place of the automatic 'phone furnished by the Home Telephone Company, manual 'phones used and furnished by appellant. The Home Telephone Company defaulted in this action. The relator demurred to the answer of appellant, the demurrer was sustained, and a judgment of forfeiture was entered against appellant.

The superior court based its judgment sustaining the demurrer to appellant's answer solely upon the ground that the fourteenth section of ordinance No. 2,522 "expressly prohibits the Sunset Company from acquiring any rights under the franchise; that the Home Company took its franchise subject to all its conditions, and it follows that the judicial sale passes only such rights as the Home Company had."

I. We are not impressed with appellant's contentions (1) that the city had no power to attach conditions to the Webster franchise; and (2) that, even if it had the power to attach conditions, the conditions attached were void.

The state had previously delegated to cities of the first class, of which relator is one, the general power "to lay out, establish, . . . streets, alleys . . . and to regulate and control the use thereof, . . . and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof." Rem. & Bal. Code, § 7507, subd. 7.

Though appellant insists that this statutory provision is not a grant of power in regard to telephone franchises, because "it does not, in express terms, refer to telephone lines, or purport to confer the right to grant telephone franchises," we do not agree therewith. The power is both generally and specifically conferred.

Again, appellant urges that, even if the power were conferred by § 7507, *supra,* it was repealed by the subsequent enactment by the same legislature of § 9314, Rem. & Bal. Code (Laws 1890, pp. 292-294; Rem & Bal. Code, §§ 9300 *et seq.*), being the general telephone franchise act. These contentions were certainly decided adversely to appellant's views in *State ex rel. Spokane & B. C. Tel. Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116, and in *Tacoma R. & Power Co. v. Tacoma,* 79 Wash. 508, 140 Pac. 565. Notwithstanding appellant's argument to the contrary, in both the cases mentioned, it was distinctly held that the power to regulate and control the use of the streets was conferred by § 7507, subd. 7, *supra,* including the power to attach conditions. The question is not open to debate. All of the conditions imposed were within the city's corporate powers and valid conditions attaching to the franchise. Indeed, if not, then Webster never obtained the city's assent to the use of the streets and never had a franchise therefor. For it is incontrovertible that the city gave its assent upon certain conditions accepted by the grantee in express and positive terms. The grantee assigned to the Home Company by and with the consent of the city formally expressed, and subject to all the terms and conditions of the original grant. As said by the court in *Southern Bell Tel. & Tel. Co. v. Richmond,* 103 Fed. 31,

"If the terms were distasteful to the company, it could have refused them, or, at the least, protested against them. It is contended [by the company] that under the act of the legislature the city council could give only a categorical answer to the request for its consent, 'Yes' or 'No,' without terms or conditions. . . . It may safely be assumed that, without such qualifications and conditions, consent would

not have been given; that they were the reasons and motive cause for the consent. Then, if the city council could not have given—had no authority to give—a conditional or qualified consent, its attempt to consent was unauthorized, *ultra vires,* and void, and in fact it never has consented in the only way in which complainants maintain it could consent. From this point of view, the condition precedent of the act of the general assembly has not been performed. In order to maintain and operate its lines in Richmond, the telephone company is without the consent of the council, and must obtain it."

The statute of Virginia delegating power to cities, the conditions imposed by the city for the grant of franchise, and the acceptance thereof were extremely analogous to the case here, and the foregoing observations are exactly pertinent to the case in hand. The terms and conditions, however, must, in respect to certain restrictions, exceptions and limitations as to both parties, be deemed to be subject to the general law. This leads us to the consideration of the condition prohibiting alienation of the franchise.

II. The ordinance forbids any sale or transfer of the franchise and telephone system, except to a corporation to be organized by the original grantee, which was effected by and with the express consent of the city formally expressed in its subsequent ordinance No. 2,694, by which the Home Company became the franchise holder. The clause against alienation contained in § 14, ordinance No. 2,522, expressly forbade transfer to any other telephone company without the consent of the city, the purpose evidently being to maintain competition in telephone service and prevent monopoly. The relator maintains, and was sustained therein by the trial court, that this condition was absolute, and prevents and avoids even an involuntary transfer by operation of law.

In general, the provision was a valid condition with valid reasons to support it, and was an agreed provision of the contract. It was not, as appellant supposes, void as against public policy, nor *ultra vires* and void as beyond the cor-

porate power of the city. But we know of no case where any
such condition has been held to defeat a transfer purely *in
invitum*. Relator makes no pretension, in pleading or argu-
ment, that the foreclosure and sale under the deed of trust
were collusive or colorable. There are many cases to the ef-
fect that covenants not to assign during the term of a lease,
where the covenant is well known to be for the benefit of the
landlord's right to personally select his tenant, will not be
held to prevent a transfer by operation of law, as by judicial
sale, where there is no indication that the proceedings are
voluntary and collusive, or colorable. A case directly to the
point is *Detroit v. Mutual Gaslight Co.*, 43 Mich. 594, 5 N.
W. 1039. There, as here, a company accepting a franchise
coupled with a covenant not to assign or transfer, mortgaged
its property and franchise and the mortgage was defaulted,
foreclosed, and the franchise and property sold under the
foreclosure. The court there held that the condition against
alienation did not avoid the transfer. For cases analogous
upon such covenants in lease contracts, see: *Riggs v. Pursell*,
66 N. Y. 193; *Doe v. Bevan*, 3 Maule & Sel. 353; *Dunlop v.
Mulry*, 85 App. Div. 498, 83 N. Y. Supp. 477, 1104; *Bemis
v. Wilder*, 100 Mass. 446; *Crouse v. Michell*, 130 Mich. 347,
90 N. W. 32, 97 Am. St. 479; *Randol v. Scott*, 110 Cal. 488,
42 Pac. 970; *Fleming v. Fleming Hotel Co.*, 69 N. J. Eq.
715, 61 Atl. 157; *In re Bush*, 126 Fed. 878; *Munkwitz v.
Uhlig*, 64 Wis. 380, 25 N. W. 424; *Gazlay v. Williams*, 147
Fed. 678, 14 L. R. A. (N. S.) 1199; Taylor, Landlord and
Tenant (9th ed.), § 408. To constitute a breach of a cove-
nant not to assign (in a lease), there must have been a suf-
ficiently formal assignment by the lessee, voluntarily, carry-
ing the legal estate. *In re Bush, supra.*

The argument of relator seems to imply that the voluntary
giving of a mortgage by the Home Company renders the
alienation by judicial sale voluntary. But as pointed out in
*Detroit v. Mutual Gaslight Co., supra*, the giving of a mort-

gage is only pledging the property as security for a debt, and conveying only an equitable interest and not the legal title. The same reasoning was applied in the lease case *In re Bush, supra.* Our law provides that franchises may be sold upon execution and may be mortgaged and sold under mortgage foreclosure. Rem. & Bal. Code, § 520 (P. C. 81 § 841). Our constitution (art. 12, § 8) provides that "No corporation shall lease or alienate any franchise, so as to relieve the franchise, or property held thereunder, from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise or any of its privileges."

It must, therefore, be considered that all parties dealt with the subject-matter with full consideration of the existing law, and that such duties and privileges as the law expressed were portions of the contracts and transactions. The law authorizing the judicial sale of property and franchise was part of the contract. The constitutional provision making the franchise and property subject to all liabilities under the franchise also entered into the entire series of transactions and follows and binds even the purchaser at judicial sale, for it must be held to purchase with full knowledge and understanding of all legal conditions attaching under the paramount law to the franchise. The purchaser even at judicial sale of a public franchise cannot enjoy the easements and other privileges without assuming the burdens attached.

Upon principle and precedent, therefore, we are agreed that the involuntary transfer of the Home Company's franchise and property, through judicial sale and by operation of law, did not give rise to a cause of forfeiture against a purchaser in good faith.

III. The court did not give heed to any of the other grounds of forfeiture alleged in the complaint, denied in the answer, and affirmatively alleged not to exist, in fact, by appellant in its answer.

As to the maintenance of an "automatic" 'phone system, relator contends that to have been a condition of the franchise. We do not find in the ordinance relating to the franchise and the maintenance of the system any stipulation that the grantee would establish, operate and maintain automatic 'phones *exclusively*. We use the word "exclusively" advisedly, for the title to ordinance No. 2,522, and the first section, use the words "automatic telephone system," but the granting words contained in the first section are as follows:

". . . to lay, place and stretch wires and cables, therein and along, over, upon, under and across the streets, alleys, etc., for the transmission of sounds, signals, conversation and intelligence through and over said wires, etc., by means of electricity, and to construct, establish, equip, install, maintain and operate an automatic telephone system, and a telegraph system, and to conduct a general telephone and telegraph business."

It appears to us, firstly, that the word "automatic" is purely descriptive of one kind of telephone system that might be "installed, established, maintained and operated" by the grantee, but that the grantee would not be held to establish, maintain and operate only an "automatic" or self-acting system of appliances. It was authorized but not compelled to establish, maintain and operate such system; in fact, it was authorized but not compelled to establish, maintain and operate a telephone system. As aptly argued by counsel for appellant, "Relator could with equal justification, argue that there was a condition absolutely requiring the maintenance of a *telegraph* system, or that, if a system were installed with all the wires underground, the franchise would be forfeitable for the failure to erect poles." Secondly, if the automatic telephone system, whatever that consisted of, proved in time to be inadequate or unsatisfactory, doubtless the city or its citizens would hasten to complain to the constituted authorities to compel the telephone company to replace the same with adequate and satisfactory equipment and appliances such as in-

ventive ingenuity provided as the highest standard of convenience and utility. The argument of relator, that "one of the purposes of chartering the automatic system was to get something like decent service," is now not sound. In these days ample and effectual regulation and control of all such public utilities obtain by and through the state's mandatory agencies, both as to economy and as to conveniences. The old clamor for competition and against monopoly in public utilities of almost every character has largely ceased, and the fundamental reasons therefor, in general, have vanished under public regulation. Monopoly of service in public utilities no longer terrifies. Economy of service and of cost to the public, together with the highest kind of efficiency and adaptability to use, is now demanded and enforced. Whether the "automatic" or the manual system of telephones is the better, we consider of small concern to the corporation of Tacoma, but whichever may be most efficient and convenient to the citizens of Tacoma we doubt not will in time be demanded and obtained. The argument of relator that the abandonment by the appellant of the "automatic" telephones constituted nonuser of the franchise, is also unsound. We must concede that it is not only the right, but the duty, of the public utility concern to discard inconvenient or obsolete apparatus and provide the best available. We do not know whether it has merely done that or not. But it is a principle of universal application that forfeitures are abhorred in the law and will not be declared except in the clearest and most positive cases, or where the contract broken so provides in express terms. A forfeiture will be avoided if possible. The franchise ordinance was not plain and positive that one of the conditions upon which it was granted was that the holder of the franchise should establish, maintain and operate an automatic system only, during the term of the franchise, for it was authorized also to "conduct a general telephone business," and therefore dedicated its property to public use with all the duties, liabilities and requirements as well as privileges,

under our constitution and laws, such dedication implied. It seems clear that the mere nonuse or abandonment of the automatic telephone would no more be a ground of forfeiture than the nonuse or abandonment of poles and wires upon the streets, or conduits under the streets.

IV.  It is apparently conceded by relator that appellant has paid or tendered all or more than the stipulated one per centum of the gross earnings of the total business earned under the Home Telephone Company's franchise, so that there is no ground of forfeiture there.

V.  We are not entirely clear as to whether relator relies upon the alleged failure of appellant to furnish relator with the sixty telephones and fifteen desk extension telephones connected and operated with the system without expense to the city, as stipulated in the ordinance. We are under the impression, however, from statements by counsel in argument and in relator's brief, that the situation is, that appellant is not furnishing the automatic telephones, but is furnishing relator, without expense to it, manual telephones to the specified number under the franchise. If that is the case, we do not consider the relator has a ground for forfeiture under that provision. In fact, we should consider a failure in that respect a trivial failure, and believe that relator is also indifferent to that reason for asserting a forfeiture, if no other more valid and substantial reason exists.

We conclude, therefore, that appellant has a valid title by purchase at judicial sale of the franchise and property of the Home Telephone Company of Puget Sound, and holds same subject to all the conditions stipulated as conditions in the grant of the franchise by the relator, and implied under the constitution and general laws of the state, and has not given cause of forfeiture thereof.

The judgment is therefore reversed and the cause dismissed.

MORRIS, C. J., MOUNT, CHADWICK, and PARKER, JJ., concur.