[No. 5535-1. Division One. August 28, 1978.]

THE CITY OF EDMONDS, *Respondent,* v. GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Appellant.*

*C. Lee Coulter, Raymond J. Lee,* and *John N. Rupp,* for appellant.

*John D. Wallace* and *Wayne Tanaka,* for respondent.

GREEN, J.—The City of Edmonds brought this action against General Telephone Company of the Northwest to recover the amount expended by the City in converting

General's overhead telephone lines along Fifth Avenue
South to an underground system. The City based its action
upon two ordinances. The first ordinance granted General a
franchise to use city streets for its facilities on the condition
that General bear the expense of undergrounding its lines
when the City chose to improve a street. The second ordi-
nance adopted a plan for the improvement of Fifth Avenue
South and ordered General to commence undergrounding
its lines located on that street. Following a trial to the
court, judgment was entered in favor of the City. General
appeals.

We reach only one issue: Did the City of Edmonds act
within the scope of its police powers when it enacted an
ordinance requiring General Telephone to underground its
wires at General's expense?

General Telephone Company is the successor–in–interest
of Edmonds Independent Telephone which began tele-
phone service to the City of Edmonds in 1908. In 1909 the
City granted the company a franchise for 25 years to use
the City's streets in conducting its business. In 1934 the
City granted the company a second 25–year franchise which
expired in 1959. General operated without a franchise until
June 22, 1975, when the City Council of Edmonds adopted
ordinance No. 1780. This ordinance stated, *inter alia*:

> *Section 1.* That there be, and there is hereby granted,
> upon the conditions set forth hereinafter to the successor
> in interest to the Edmonds Independent Telephone
> Company, the General Telephone Company of the
> Northwest, Inc., for the period of 20 years from and after
> the effective date of this ordinance, the right to maintain
> and operate a general telephone and telegraph system
> and facilities therewith in the City of Edmonds and the
> right to maintain existing facilities and place, erect, lay,
> maintain and replace the existing facilities by under-
> grounding the same along and under all of the streets,
> alleys, and other public highways of said City.
>
> . . .
>
> *Section 6.* All existing poles placed in any street or
> alley in the City, shall, at the time of improvement of
> said street or alley be removed and the grantee's facilities

shall be undergrounded at the cost and expense of the grantee in an orderly manner in conjunction with the improvement.

Two weeks later, the council enacted ordinance No. 1781 authorizing the improvement of Fifth Avenue South, a major arterial carrying traffic into downtown Edmonds. The proposed improvement included the construction and repair of sidewalks and curbs, landscaping, and possible resurfacing of the street. The ordinance further provided that overhead telephone, electric, and cable TV lines be undergrounded in conjunction with the improvement. The ordinance stated the council found that the poles used to support the overhead facilities were an obstruction to pedestrian traffic and might constitute a hazard to vehicles leaving the traveled portion of the roadway.[1]

General refused to comply with the ordinance, contending that its purpose was beautification and that it amounted to an unlawful condemnation of its property. In order that the street improvement might proceed on schedule, the telephone company agreed that the City would pay for the work without prejudicing its position before the court. The trial from which this appeal is taken followed.

At trial, Vincent Graham, district manager for General Telephone, testified that, to his knowledge, no accidents had been reported involving a utility pole and a motor vehicle on Fifth Avenue South. On cross–examination, he estimated the life of the poles at 10 years and admitted that undergrounding at that later date would involve digging up the streets and sidewalks.

William Brill, the engineering construction supervisor for the company, testified that the poles stood from 6 inches to

[1]Apparently, this finding is based upon the opinion of the assistant city engineer, reflected in the minutes of the city council meeting which took place on June 3, 1975. He considered the poles a hazard because they do not yield under impact, as do the new metal variety, and because they carry live electric wires. He reported the receipt of complaints of damage to campers which struck utility poles in the course of parking in downtown Edmonds. According to him, there were seven accidents in the preceding 4 months involving utility poles.

2 feet off the traveled portion of the City's streets. However, he noted that numerous objects, including street signs, mailboxes, fire plugs, litter cans, and planters remain on the street as potential hazards to vehicular traffic. He further stated that a downed telephone wire would not expose anyone to an electric shock, but admitted that the combined cables weighed from 5 to 10 pounds per foot and that the poles were placed about 100 feet apart. On cross-examination, Mr. Brill agreed that removal of the aerial facilities would lessen the hazard to the motoring public, and that coordination of the undergrounding with the other utilities would minimize disruption of traffic, would avoid damage to improvements that might be caused by doing the work at a later time, and would save the company money because it would be able to use tunnel trenches constructed during the course of improvements.

The trial court concluded that the City of Edmonds had acted within the scope of its police power when it required the company to underground at its own expense and accordingly entered judgment for the City. We affirm.

Const. art. 11, § 11 provides:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

The general law governing the placement of telephone lines is RCW 80.36.040, which states:

> Any . . . telephone . . . company . . . doing business in this state, shall have the right to construct and maintain all necessary lines of . . . telephone for public traffic along and upon any public road, street or highway, along or across the right–of–way of any railroad corporation, and may erect poles, . . . wires and any other necessary fixture of their lines, *in such manner and at such points as not to incommode the public use of the railroad or highway* . . .

(Italics ours.) General argues that the italicized provision limits a city's exercise of its police power to preventing the physical obstruction of a street. We believe this is too narrow a construction of this statute. In our view, the intent of

the legislature is to leave the manner in which a company erects and maintains its lines within a city subject to the reasonable and proper exercise of the municipal police power. *See Seattle v. Western Union Tel. Co.*, 21 Wn.2d 838, 858, 153 P.2d 859 (1944).

■ In determining whether the two ordinances at issue in the present case constitute a reasonable and proper exercise of the police power of the City of Edmonds, we apply the two–step test set forth in *State v. Conifer Enterprises, Inc.*, 82 Wn.2d 94, 96–97, 508 P.2d 149 (1973). First, do the ordinances tend to promote the health, safety, or general welfare of the people? Specifically, do they tend to correct some evil or promote some interest of the City? Second, do the ordinances bear a reasonable and substantial relation to accomplishing the purpose established in step one?

■ The *Conifer* court noted that in instances where the law in question does not include a recital of the facts upon which the legislation is based, the court may engage in certain presumptions. That is, if the court can reasonably conceive of a state of facts which justify the legislation, those facts will be presumed to exist, and it will be presumed that the statute was passed with reference to those facts. In addition, two other rules guide judicial review of the State's exercise of the police power: (1) The party challenging the constitutionality of the act bears the burden of establishing its invalidity beyond all reasonable doubt, and (2) Every presumption will be in favor of constitutionality. *State v. Conifer Enterprises, Inc., supra* at 97; *Salstrom's Vehicles, Inc. v. Department of Motor Vehicles*, 87 Wn.2d 686, 691, 555 P.2d 1361 (1976); *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 528, 520 P.2d 162 (1974); *Lenci v. Seattle*, 63 Wn.2d 664, 667, 388 P.2d 926 (1964).

Here, the court can conceive of a state of facts which would justify the ordinances. Traffic on nearly all streets and highways has increased considerably in recent years.

With this increase in traffic has come an increase in accidents. Collisions with solid objects in proximity to the traveled portions of our streets and highways enhance the injuries resulting from these accidents.[2] Furthermore, street obstructions created while carrying out improvements or while repairing, replacing, or relocating utility poles and wires increase the risk of accident. Requiring that all wires be placed underground at the same time that the street is improved promotes the public's safety by reducing the number of times a street must be blocked. In essence, these are the facts found by the trial court, and these findings stand unchallenged.

■ In our judgment, the ordinances are a valid exercise of the City's police power. Their purpose is to promote the public safety, and the means employed bear a reasonable and substantial relation to accomplishing that purpose.[3]

We do not find General's arguments for a contrary result convincing. First, General contends that city ordinance No. 1780, upon which ordinance No. 1781 is based, is a nullity because it purports to grant a franchise for the company's use of the city streets. General asserts that it occupies the streets by reason of a state franchise under Const. art. 12, § 19,[4] and RCW 80.36.040. We note that past decisions have

---

[2]While it is true, as argued by General, that fire hydrants and other items remain above ground on Fifth Avenue South in Edmonds, there is no evidence that it is feasible to underground these items. In any event, their presence is irrelevant to the question of whether General's poles and wire by themselves create a safety hazard requiring that they be placed underground. Consequently, the City did not act arbitrarily in allowing the other items to remain above ground while requiring General to underground its facilities.

[3]See *Central Maine Power Co. v. Waterville Urban Renewal Authority*, 281 A.2d 233 (Me. 1971), where the Maine court held that an urban renewal authority, pursuant to the exercise of the police power delegated to it, properly required a power company to place its wires underground.

[4]Const. art. 12, § 19 provides:

"Any . . . corporation . . . organized for the purpose . . . shall have the right to construct and maintain lines of telegraph and telephone within this state . . . Railroad corporations . . . shall allow telegraph and telephone corporations . . . to construct and maintain telegraph lines on and along the rights of way of such railroads . . . The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section."

construed RCW 80.36.040 as requiring a city's consent before a telephone company may use its streets. *State ex rel. Spokane & British Columbia Tel. & Tel. Co. v. Spokane,* 24 Wash. 53, 60, 63 P. 1116 (1901); *State ex rel. Tacoma v. Sunset Tel. & Tel. Co.,* 86 Wash. 309, 319, 150 P. 427 (1915); *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 588, 152 P. 11 (1915); *State ex rel. Ellertsen v. Home Tel. & Tel. Co.,* 102 Wash. 196, 201, 172 P. 899 (1918); and *Seattle v. Western Union Tel. Co., supra* at 850. However, assuming arguendo that the telephone company has a State franchise which renders the City franchise superfluous, the State franchise does not exempt the company from reasonable regulatory ordinances. *Seattle v. Western Union Tel. Co., supra* at 858; *cf. Washington Natural Gas Co. v. Seattle,* 60 Wn.2d 183, 185, 373 P.2d 133 (1962) (involving a city rather than a state franchise). We have found that ordinance No. 1781 is a reasonable regulatory ordinance.[5]

Second, the company claims that undergrounding is a matter of state concern and, therefore, is not subject to the City's police power. Since the legislature has charged the Washington Utilities and Transportation Commission with regulating a telephone company's rates, services, facilities, and practices,[6] General argues that undergrounding, insofar

---

[5]According to General, ordinance No. 1780, which purports to grant a franchise, is a nullity, and therefore, ordinance No. 1781 is also a nullity because it is based on ordinance 1780. However, ordinance No. 1780 contains the following clause:

> *Section 14.* If any section, subsection, clause, phrase or word of this chapter is for any reason held to be invalid or unconstitutional, such invalidity or unconstitutionality shall not affect the validity or constitutionality of the remaining portions of this chapter . . .

Assuming that the portion of the ordinance which purports to grant a franchise is void, the above-quoted clause saves that portion which requires the company to underground at its own expense when the City makes street improvements.

[6]RCW 80.01.040(3) states:
"The Utilities and Transportation Commission shall:
". . .

as it affects its facilities and rates, falls within the jurisdiction of the Commission. In support of this position, it relies on *In re Public Serv. Elec. & Gas Co.*, 35 N.J. 358, 173 A.2d 233, 240 (1960); *Duquesne Light Co. v. Monroeville*, 449 Pa. 573, 298 A.2d 252 (1972); and *Union Elec. Co. v. Crestwood*, 499 S.W.2d 480 (Mo. 1973). These cases are distinguishable. In *In re Public Serv. Elec. & Gas Co., supra* at 40, the New Jersey court found no express reservation of the jurisdiction conferred on the board of public utility commissioners that would justify a municipal ordinance requiring the undergrounding of wires over a private railroad right–of–way. However, the court conceded that authority may be found to justify an ordinance which affected only public streets. Similarly, in *Union Electric Co.*, the court struck down a city ordinance prohibiting *all* overhead transmission, whether on public or private property. In *Duquesne Light Co.*, the court held that a statute giving boroughs the power to define a reasonable district within which wires shall be placed underground did not confer upon a borough the power to compel undergrounding of a public utility's wires.

In the instant case, the ordinance in question is not a general ordinance, affecting *all* overhead facilities of the company located on both public and private property in Edmonds. Rather, its effect is limited to one public street, Fifth Avenue South. As we discussed above, the ordinance was properly enacted pursuant to the legislature's express reservation to cities of the authority to regulate a telephone company in its use of city streets. RCW 80.36.040. The legislature has embellished that authority by granting optional municipal code cities such as Edmonds[7] the power to

(3) Regulate in the public interest . . . the rates, services, facilities, and practices of all persons engaging within this State in the business of supplying any utility service or commodity to the public for compensation . . ."

[7]RCW 35A.11.020 states, in part: "In addition and not in limitation, the legislative body of each code city shall have any authority ever given to any class of municipality or to all municipalities of this State before or after the enactment of this title . . ."

"authorize . . . the use of electricity . . . upon any of said [city] streets, or for other purposes, and to prescribe the . . . conditions" of that use. RCW 35.22.280(7); the power "to permit the construction and maintenance of . . . telephone . . . lines". RCW 35.24.290(10); and the power to "grant . . . franchises for the use of public streets . . . for poles . . . and wires . . . for transmission and distribution of . . . signals and other methods of communication". RCW 35A.47.040. Consequently, the City's power to require undergrounding in these circumstances constitutes an exception to the general regulatory powers lodged in the Washington Utilities and Transportation Commission.

Third, General contends that the court may not presume that the legislative body had before it facts to justify its legislation when, as here, that body presents to the court the factual material on which it based its legislation. According to the company, the court must then examine the facts upon which the legislative body relied. However, General does not assign error to the trial court's findings of fact, and we accept them as verities on appeal. These findings support the conclusion that the City properly exercised its police power in requiring the company to underground its facilities as a part of the general improvement of Fifth Avenue South. Moreover, the findings are supported by substantial evidence. Thus, we find no error.

Fourth, General claims that the purpose of the ordinances was beautification and that aesthetic reasons alone will not justify the City's exercise of the police power. As noted earlier, the ordinances also serve to promote the public safety. If a regulation serves a generally recognized ground for the exercise of the police power, the fact that aesthetic considerations play a part in its adoption does not affect its validity. *Lenci v. Seattle,* 63 Wn.2d 664, 677, 338 P.2d 926 (1964).

228

Accordingly, we affirm the judgment of the trial court.

FARRIS, C.J., and CALLOW, J., concur.