[Nos. 11975–3–I; 13138–9–I.  Division One.  January 7, 1985.]

GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Respondent,* v. THE CITY OF BOTHELL, ET AL, *Appellants.*

THE CITY OF REDMOND, *Appellant,* v. GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Respondent.*

GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Respondent,* v. THE CITY OF REDMOND, *Appellant.*

*John D. Wallace, City Attorney,* and *Ogden, Ogden & Murphy,* for appellants Bothell, et al.

*Larry Martin, City Attorney, Wayne D. Tanaka, Assistant,* and *Ogden, Ogden & Murphy,* for appellant Redmond.

*Kenneth O. Eikenberry, Attorney General, James R. Cunningham, Senior Assistant,* and *Patricia H. O'Brien, Assistant,* for appellant State.

*Livengood, Silvernale, Carter & Tjossem* and *Robert P. Tjossem,* for respondent.

RINGOLD, J.—In separate actions, General Telephone Company (General) was granted summary judgments against the cities of Bothell and Redmond. The trial courts concluded that a tariff published by General preempted certain city ordinances requiring undergrounding of telephone facilities. The appeals are consolidated here. Bothell also appeals from a finding by the lower court that a material issue of fact exists as to whether Bothell's ordinance was enacted in the interests of the health, safety, and wel-

fare of the public.[1]

On June 25, 1977 General, in accordance with RCW 80.36.110, filed an amended tariff with the State Utilities and Transportation Commission which required that those requesting telephone facilities be relocated underground pay the cost of relocation. The amended tariff was effective June 25, 1977. Bothell's ordinance 999, enacted March 16, 1981, extends a franchise to General allowing the company to occupy portions of city streets and to have facilities along the public rights of way. Section 6 of the franchise ordinance requires that General pay the cost of undergrounding its facilities should the City improve the public right of way.[2]

On March 1, 1982 Bothell enacted ordinance 1039 which provided that aerial utility facilities be undergrounded along and upon 100th Avenue N.E. between N.E. 190th and N.E. 197th. It also stated, in accordance with section 6 of the franchise ordinance, that General must pay for the costs of this relocation.

General brought this action seeking a declaration that the two Bothell ordinances are invalid to the extent they required General to pay the cost of undergrounding. The trial court granted summary judgment to General declaring section 6 of ordinance 999 inoperative, and Bothell appeals.

THE FRANCHISE

General contends that cities have no power to require it to underground its facilities because telephone companies have a state franchise to maintain telephone lines granted

---

[1]Because the resolution of the Bothell case is dispositive, the facts of only that case will be discussed.

[2]Bothell City Ordinance 999, § 6: "All existing poles and related facilities placed in any public right-of-way including streets or alleys in the City shall, at the time of improvement of said public right-of-way, be removed and the grantee's facilities shall be undergrounded at the cost and expense of the grantee, not the City, in an orderly manner in conjunction with the improvement . . ."

by the state constitution[3] and RCW 80.36.040. Bothell, on the other hand, argues that a city has the power to regulate its streets for the public safety and to grant franchises to telephone companies under RCW 35.22.280(7), 35.24.290-(10), and Const. art. 11, § 11.[4]

The Supreme Court resolved this issue in *State ex rel. Spokane & B.C. Tel. & Tel. Co. v. Spokane,* 24 Wash. 53, 60, 63 P. 1116 (1901), interpreting Const. art. 12, § 19: "There is no prescription of rights referable to the roads, highways, and streets of the state. The obvious construction of this provision is that all such rights were left to the discretion of the legislature." The court went on to quote from what later became RCW 80.36.040, stating, "That where the right–of–way, as herein contemplated, is within the corporate limits of any incorporated city, the consent of the city council thereof shall be first obtained before such telegraph or telephone line can be erected thereon." 24 Wash. at 61. Finally, the court concluded that the necessary police power to regulate and control the use of city streets was conferred upon the cities by the Legislature. 24 Wash. at 61.

In *State v. PUD 1,* 55 Wn.2d 645, 649–50, 349 P.2d 426 (1960), the Supreme Court applied these principles and held:

"In the absence of an express and definite provision to the contrary, a utility company maintains its structures and rights in a public street subject to the paramount right of the city to use its streets for all proper governmental purposes. A grant, *franchise,* easement or other right accorded to a utility company by public authority, to maintain structures in public streets, is at all times

---

[3]Const. art. 12, § 19: "Any association or corporation, . . . organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph and telephone within this state . . . The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section."

[4]Const. art. 11, § 11: "Any . . . city . . . may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

subject to the police power of the sovereign, and *unless expressly agreed to otherwise in the franchise, the company must, at its own expense,* make such changes as the public convenience and necessity require, and it is bound to alter, remove, relocate, support and maintain a structure, when necessary for the city's carrying out a function in the interest of public health, safety or welfare . . .

(Italics ours.)

■ This court held that it was a reasonable exercise of the police power for a city to require a telephone company to underground its facilities. *Edmonds v. General Tel. Co. of the Northwest, Inc.,* 21 Wn. App. 218, 584 P.2d 458 (1978). Thus we conclude that General's right to maintain facilities in Bothell's public streets is subject to the reasonable exercise of Bothell's police power to regulate the use of its streets.

STATE PREEMPTION

After the opinion of this court in *Edmonds* was issued, General amended its tariff to provide:

[I]f the Company is requested to relocate its facilities underground, or if the Company is required by law to relocate its facilities underground, the cost of constructing the new and removing the old construction shall be passed on to the owners of real property served along the route of the constructed facility or to others requesting such relocation construction. In lieu of all or part of payment of such costs, those requiring such construction may furnish such materials or perform such work as may be mutually agreed between the Company and others.

This tariff was enacted in accordance with RCW 80.36.100 and .110 and ordinarily would have the force and effect of law. *See Allen v. General Tel. Co. of the Northwest, Inc.,* 20 Wn. App. 144, 578 P.2d 1333 (1978); *Moore v. Pacific Northwest Bell,* 34 Wn. App. 448, 455, 662 P.2d 398 (1983). General argues that the tariff preempts the City's franchise, and that section 6 of the franchise is invalid because it conflicts with the tariff.

Bothell contends that the tariff and the ordinance may be harmonized, because only those "requesting" relocation

458

are obliged by the tariff to pay costs and not those "requir- ing" relocation.

We need not consider this interpretation of the tariff because in our view the Washington Utilities and Trans- portation Commission (WUTC) has no authority to allow General to enact a tariff which changes the conditions of General's franchise and forces the City to pay the cost of undergrounding the company's facilities.

█ The Legislature conferred upon the WUTC the power to regulate the rates, services, facilities, and practices of telephone companies. RCW 80.01.040. The Legislature also gave cities the power to grant franchises to telephone companies. RCW 35.24.290(10), 35A.47.040. Bothell's fran- chise to General is a form of contract between the City and the telephone company. *State ex rel. Ellertsen v. Home Tel. & Tel. Co.,* 102 Wash. 196, 172 P. 899 (1918). It may only be abrogated by the WUTC if it affects rates or serv- ices to the general public; if the franchise concerns propri- etary rights of the city granting the franchise, the WUTC has no power. *State ex rel. Seattle v. Seattle & R.V. Ry.,* 113 Wash. 684, 194 P. 820, 15 A.L.R. 1194 (1921).

If General pays the cost of undergrounding the facilities it may in some manner affect overall rates chargeable to users of the telephone company's services. This indirect effect, however, does not bring this franchise provision within the ambit of the WUTC's regulatory powers. By vir- tue of the franchise, the City acquired a proprietary contract right requiring General to pay the cost of under- grounding. The WUTC may not nullify this right. *See Seattle & R.V. Ry.*

PREFERENTIAL TREATMENT

General contends that RCW 80.36.170 prevents it from paying the relocation cost because that would be giving Bothell an unreasonable preference or advantage over other localities. RCW 80.36.170 states:

No . . . telephone company shall make or give any undue or unreasonable preference or advantage to any

person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

RCW 80.36.170 safeguards against a telephone company granting preferential service. If the undergrounding provision is a valid exercise of Bothell's police power, any other city may impose a similar condition upon the grant of a franchise. The statute is inapplicable.

### POLICE POWER

The final question is whether ordinance 1039 was enacted by Bothell in the proper exercise of police power. The city council found that undergrounding along 100th Avenue N.E. promoted public safety. General presented affidavits supporting the conclusion it did not. The trial court found that there was a material issue of fact, which required a trial to determine if Bothell's ordinance furthered the interests of public safety.

The Supreme Court has enunciated the appropriate standard of review for the exercise of the police power as follows:

> [A]ny legislation under the police power must be reasonably necessary in the interest of the public health, safety, morals, and the general welfare. . . . [I]f a state of facts justifying the legislation can be conceived to exist, the existence of these facts will be presumed. This presumption severely limits judicial review at this stage, because in order to fail this first test there must be no reasonably conceivable state of facts creating a public need for regulation.

(Citations omitted.) *Cougar Business Owners Ass'n v. State,* 97 Wn.2d 466, 477, 647 P.2d 481, *cert. denied,* 459 U.S. 971 (1982). Where a legislative declaration of the basis and necessity for an enactment appears in the ordinance it is to be deemed conclusive, unless, aided only by facts of which a court can take judicial notice, it can be said that the legislative declaration on its face is obviously false. *Hoppe v. State,* 78 Wn.2d 164, 469 P.2d 909 (1970).

Affirming a motion for summary judgment upholding the

460

validity of a county regulation, the Supreme Court in *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 151, 459 P.2d 937 (1969) held that disagreement with the county's findings must be addressed to the legislative branch of government. The court went on to say that, "If a state of facts which would justify the legislation can reasonably be conceived to exist, courts must presume it did exist and the legislation was passed for that purpose. There is no requirement that the court find facts justifying the legislation." *Petstel*, at 151–52.

This court in *Edmonds v. General Tel. Co.*, held that it is conceivable that undergrounding will promote safety to motorists and pedestrian passersby. We readily perceive a state of facts to exist justifying the city council's declaration. The ordinance must be upheld as a valid exercise of police power. *Hoppe*.

We reverse both orders granting summary judgment to General and grant the Cities' motions for summary judgment.

CORBETT, C.J., and WILLIAMS, J., concur.

Review granted by Supreme Court March 15, 1985.